UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | |
|---|---|---|
| BIRDA TROLLINGER, VIRGINIA BRAVO, KELLY KESSINGER, IDOYNIA MCCOY, REGINA LEE, PATRICIA MIMS, LORI WINDHAM and ALEXANDER HOWLETT, individually and on behalf of all others similarly situated | ) ) ) ) ) ) ) ) | No. 4:02-cv-23 *Edgar* |
| *Plaintiffs,* | ) ) | |
| *v.* | ) ) | |
| TYSON FOODS, INC., JOHN TYSON, ARCHIBALD SCHAFFER III, RICHARD BOND, KENNETH KIMBRO, GREG LEE, KAREN PERCIVAL, AHRAZUE WILT and TIM MCCOY, | ) ) ) ) ) ) | |
| *Defendants.* | ) | |

## **MEMORANDUM**

Plaintiffs Birda Trollinger, Virginia Bravo, Kelly Kessinger, Idoynia McCoy, Regina Lee, Patricia Mims, Lori Windham, and Alexander Howlett (collectively "Plaintiffs") bring this action against Tyson Foods, Inc., John Tyson, Archibald Schaffer III, Richard Bond, Kenneth Kimbro, Greg Lee, Karen Percival, Ahrazue Wilt, and Tim McCoy (collectively "Tyson") alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"). [Court Doc. No. 115, Second Amended Complaint]. Plaintiffs are former Tyson employees. *Id.* Plaintiffs assert that Tyson engaged in an ongoing scheme to hire illegal immigrants which depressed the wages paid to Plaintiffs below the wages Tyson would have needed to pay Plaintiffs had they not engaged in the allegedly illegal immigrant hiring scheme. *Id.* Plaintiffs also seek to certify this action as a class action lawsuit; however, this

Court has not yet ruled on Plaintiffs' class certification motion. [*See* Court Doc. No. 121].

Tyson moves for summary judgment dismissal of the claims filed against it by Idoynia McCoy and Regina Lee based on statute of limitations grounds under RICO. [Court Doc. No. 141]. Plaintiffs oppose the motion arguing that the separate accrual rule should apply and Tyson should be liable for the hiring of illegal immigrants occurring within the statute of limitations period. After reviewing the undisputed record, the Court concludes that Tyson's motion for summary judgment will be DENIED.

**I.      Background**

The relevant facts of this narrow motion are clear and undisputed. Plaintiffs filed their first complaint in this action on April 2, 2002. [Court Doc. No. 1]. Plaintiffs designated Idoynia McCoy and Regina Lee as named plaintiffs in the second amended complaint. [Court Doc. No. 115]. Ms. McCoy commenced working at Tyson's Ashland, Alabama plant in 1977. [Court Doc. No. 143-2, Deposition of Idonyia (sic) McCoy ("McCoy Dep."), pp. 15-16]. Ms. McCoy left Tyson in 1979 and returned in 1980 where she continued to work until Tyson terminated her in 1998. *Id.* at pp. 17, 29. Ms. McCoy discovered that Tyson's alleged illegal immigrant hiring scheme was depressing her wages in 1997. [Court Doc. No. 143-3, Continued Deposition of Idoynia McCoy ("Con't. McCoy Dep."), p. 66]. She asserts that Tyson's illegal immigrant hiring scheme continued until her termination in 1998. McCoy Dep., p. 51, 108-09, 120.

Ms. Lee began working at Tyson's Heflin, Alabama plant in 1982. [Court Doc. No. 143-4, Deposition of Regina Lee ("Lee Dep."), pp. 42-43]. Ms. Lee left Tyson for some time between 1983 and 1984 and returned to work at Tyson in 1984. *Id.* at 45-47, 50-51. She worked continuously at Tyson from 1984 to 2004. *Id.* at 51, 111, 113. Ms. Lee first discovered that her

wages were being depressed due to Tyson's alleged hiring of illegal immigrants in 1996 or 1997. *Id.* at 208; [Court Doc. No. 143-5, Continued Deposition of Regina Lee ("Con't. Lee Dep."), p. 135]. Ms. Lee asserts that the alleged wage depression has continued from 1996 until when she terminated her employment with Tyson in 2004. Lee Dep., pp. 171-172; Con't. Lee Dep., p. 11, 135.

**II.     Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v.*

*Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

### III.  Analysis

Tyson argues that Ms. McCoy's and Ms. Lee's claims are barred by the statute of limitations under RICO. Plaintiffs allege that the illegal hiring of immigrants continued until the dates of Ms. Lee's and Ms. McCoy's terminations. Thus, they argue, each new illegal immigrant hired within the limitations time period constituted a new injury under RICO for which they may recover under the "separate accrual rule."

RICO provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of

-4-

unlawful debt.

18 U.S.C. § 1962(c).  As the U.S. Supreme Court has noted, "'racketeering activity' is a term of art defined in terms of activity that violates other laws, including more than 50 specifically mentioned federal statutes, which forbid, for example, murder-for-hire, extortion, and various kinds of fraud."  *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 182, 117 S.Ct. 1984, 1987 (1997).  RICO also allows that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorneys' fee. . ."  18 U.S.C. § 1964(c).  Although RICO itself does not provide a statute of limitations for such claims, the U.S. Supreme Court has held that actions pursuant to 18 U.S.C. § 1964(c), known as civil RICO actions, are subject to a 4-year limitations period.  *Klehr*, 521 U.S. at 182.  The Supreme Court borrowed the statute of limitations from the Clayton Act, 15 U.S.C. § 15b, finding it to be analogous to civil RICO claims.  *Id.* at 182, 188-89.

Determining when a civil RICO cause of action accrues has been a source of some confusion, however.  The Supreme Court outlined the confusion in *Klehr*, and in that case, rejected the "last predicate act" rule for accrual of civil RICO claims.  521 U.S. at 186.  The "last predicate act" rule provided that "the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity.  The last predicate act need not have resulted in injury to the plaintiff but must be part of the same pattern."  *Id.* (quoting *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1130 (3d Cir. 1988)).  The Supreme Court declined, however, to indicate which of the three remaining possible accrual rules, the "injury rule", the "injury and pattern discovery

rule", or the "injury discovery rule", was the correct accrual rule for civil RICO actions. *Klehr*, 521 U.S. at 191-93.

In 2000 the Supreme Court eliminated another of the possible civil RICO accrual rules, the "injury discovery and pattern" rule. *See Rotella v. Wood*, 528 U.S. 549, 120 S.Ct. 1075 (2000). The Court rejected the "injury and pattern discovery rule" as

> an extension of the traditional federal accrual rule of injury discovery, and unwarranted by the injury discovery rule's rationale. Federal courts, to be sure, generally apply a discovery accrual rule when the statute is silent on the issue, as civil RICO is here. . . . But in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.

*Id.* at 555, 120 S.Ct. at 1081 (citations omitted).

In a recent opinion by the Sixth Circuit, *Sims v. Ohio Casualty Ins. Co.*, the Sixth Circuit relied on *Rotella* and noted that the 4-year statute of limitations for civil RICO actions "begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." 151 Fed. Appx. 433, 435 (6th Cir. 2005)(relying on *Rotella*, 528 U.S. at 553-55). The Sixth Circuit has also made clear that "plaintiffs need not be aware of every minute fact underlying their RICO claims." *Sims*, 151 Fed. Appx. at 436. Thus, the Sixth Circuit applies an "injury discovery" rule.

Other Circuit Courts of Appeals have applied the "separate accrual" rule, in addition to the "injury discovery" rule. In *Bankers Trust Co. v. Rhoades*, the Second Circuit established the separate accrual rule. 859 F.2d 1096 (2d Cir. 1988). In *Bankers Trust* the Second Circuit provided that:

> a plaintiff's action accrues against a defendant for a specific injury on the date that plaintiff discovers or should have discovered that injury. . . . At a later date, when a new and independent injury is incurred from the same violation the

> plaintiff is again 'injured in his business or property' and his right to sue for damages from that injury accrues at the time he discovered or should have discovered that injury. The logical end result is that a plaintiff may sue for any injury he discovers or should have discovered within four years of the commencement of his suit, regardless when the RICO violation causing such injury occurred.

859 F.2d at 1103 (citations omitted). The Second Circuit reasoned that because the U.S. Supreme Court determined that the statute of limitations from the Clayton Act was the most appropriate limitations period to apply for civil RICO claims, the Clayton Act should also provide the accrual rule for civil RICO actions. *Id.* at 1104 (citing *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 2764, 2767, 97 L.Ed.2d 121 (1987)). The Court held that civil RICO actions are "subject to a rule of separate accrual." *Bankers Trust Co.*, 859 F.2d at 1105; *see also In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56, 58-59 (2d Cir. 1998). A "corollary rule" to the separate accrual rule is "that damages may not be recovered for injuries sustained as a result of acts committed outside the limitations period." *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996) (quoting *State Farm Mut. Auto. Ins. Co. v. Ammann*, 828 F.2d 4, 5 (9th Cir. 1987) (concurrence)). A number of other federal Circuit Courts of Appeal recognize the separate accrual rule, including the Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh. *See McCool v. Strata Oil Co.*, 972 F.2d 1452,1465 (7th Cir. 1992) (citing *Granite Falls Bank v. Henrikson*, 924 F.2d 150, 154 (8th Cir. 1991), *abrogated on other grounds by Rotella v. Wood*, 528 U.S. 549, 120 S.Ct. 1075 (2000); *Bivens Gardens Office Bldg., Inc. v. Barnett Bank*, 906 F.2d 1546, 1554 (11th Cir. 1990), *cert. denied*, 500 U.S. 910, 111 S.Ct. 1695 (1991), *abrogated on other grounds by Rotella v. Wood*, 528 U.S. 549; *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817, 820 (10th Cir. 1990)), *abrogated on other grounds by Rotella*, 528 U.S. 549; *Grimmett*, 75 F.3d at 512; *Love v. National Medical Enterprises*, 230 F.3d 765,

775 (5th Cir. 2000); *Pilkington v. United Airlines*, 112 F.3d 1532, 1535 (11th Cir. 1997). Thus, a majority of the Circuit Courts of Appeal apply the separate accrual rule in civil RICO actions.

A few courts have endeavored to analyze what types of injuries will restart the statute of limitations clock. In *Grimmett* the Ninth Circuit explained that "'[T]wo elements characterize an overt act which will restart the statute of limitations: 1) It must be a *new and independent act* that is not merely a reaffirmation of a previous act; and 2) It must *inflict new and accumulating injury* on the plaintiff.'" 75 F.3d at 513 (quoting *Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)). As the Seventh Circuit has noted "[d]ifferent injuries flowing from the same conduct are not usually actionable in separate lawsuits." *McCool*, 972 F.2d at 1465 n.10. In addition, "[a] mere recharacterization or continuation of damages into a later period will not serve to extend the statute of limitations for a RICO action." *Pilkington*, 112 F.3d at 1537.

In *Bingham v. Zolt* the Second Circuit determined that the separate accrual rule applied because the alleged injuries involved "a continuing series of fraudulent actions undertaken to divert and conceal assets and income." 66 F.3d 553, 561 (2d Cir. 1995). The court found that the defendants used a "variety of schemes" and that "each illegal diversion constituted a new and independent legally cognizable injury to the estate." *Id.* In *Love*, the Fifth Circuit determined that the separate accrual rule applied and that each time the plaintiff health insurance company became "obligated to pay a fraudulent (assumed) insurance claim submitted" by the defendants, it suffered an injury. 230 F.3d at 775. However, in *Pilkington*, a case involving allegations of ongoing harassment, the Eleventh Circuit faced an argument that each act of harassment against a non-union airline pilot following a pilot strike constituted a new and independent injury for

purposes of civil RICO statute of limitations. 112 F.3d at 1537. The Eleventh Circuit initially noted that RICO did not cover personal injuries and determined that the ongoing harassment occurring within the limitations period did not constitute new and independent injuries, but was merely a continuation of the same injury that had been accumulating prior to the commencement of the statute of limitations period. *Id.* at 1536-38.

The Sixth Circuit has not specifically held that it applies the separate accrual rule to civil RICO actions. However, at least one other district court in this Circuit has applied the separate accrual rule, without specifically designating the rule as such. *See James v. McCoy*, 56 F.Supp.2d 919, 932-33 (S.D. Ohio 1998), *aff'd* 181 F.3d 101 (6th Cir. 1999). In *James* the district court held that although fraudulent activity that occurred prior to the commencement of the statute of limitations was time-barred, separate fraudulent activity that occurred within the statutory period gave rise to a new RICO claim. *Id.* at 933. The court held that the plaintiff's "allegations of activity within the limitations period may give rise to an independent RICO claim, but they do not permit him to recover for the previous conduct which was discovered more than four years before this action was filed." *Id.* at 934 (relying on *Klehr*, 521 U.S. at 190, 117 S.Ct. at 1991).

In applying the Clayton Act's statute of limitations to civil RICO actions, the Supreme Court noted the similarities between the Clayton Act, 15 U.S.C. § 15b, and civil RICO lawsuits. *See Klehr*, 521 U.S. at 188-89. In *Klehr*, the Supreme Court also acknowledged the separate accrual rule without expressly approving it:

> Some Circuits have adopted a 'separate accrual' rule in civil RICO cases, under which the commission of a separable, new predicate act within a 4-year limitations period permits a plaintiff to recover for the additional damages caused by that act. But, as in the antitrust cases, the plaintiff cannot use an independent,

new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period.

521 U.S. at 190.

Within the antitrust context of the Clayton Act, the Sixth Circuit applies a separate accrual rule. For example, in *DXS, Inc. v. Siemens Medical Systems, Inc.*, an antitrust case applying 15 U.S.C. § 15b, the Sixth Circuit found that "an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act." 100 F.3d 462, 467 (6th Cir. 1996) (citing *Peck v. General Motors Corp.*, 894 F.2d 844, 848-49 (6th Cir. 1990) (per curiam)). In *Barnosky Oils, Inc. v. Union Oil Company of California*, the Sixth Circuit noted that "[w]hen a continuous antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants." 665 F.2d 74, 81 (6th Cir. 1981).

A majority of the Circuit Courts of Appeal have applied the separate accrual rule to civil RICO actions. Further, the Sixth Circuit has applied the separate accrual rule in the analogous antitrust context. At least one other district court in this Circuit appears to have applied the separate accrual rule in the civil RICO context. For these reasons, this Court will apply the separate accrual rule in this action.

The question remains whether the separate accrual rule applies in this action. Plaintiffs' theory is that Tyson engaged in an illegal immigrant hiring scheme in which Tyson allegedly hired illegal aliens which in turn depressed the wages that legal U.S. citizens could earn by working at Tyson. They argue that each time Tyson hired an illegal immigrant, such hiring constituted a new and independent injury causing independent damages. The Court agrees that, based on Plaintiffs' alleged theory and viewing the facts in the light most favorable to the Plaintiffs, each time Tyson unlawfully hired an illegal immigrant, the Plaintiffs sustained an

injury to their business.

Tyson cites two cases in other jurisdictions in support of its position that the alleged illegal immigrant hiring scheme constituted one ongoing injury. *See Sasser v. Amen*, 2001 WL 764953 (N.D. Cal. 2001); *Pharr v. Evergreen Gardens, Inc.*, 2004 WL 42262 (S.D.N.Y. 2004). In *Pharr*, a civil RICO suit, the district court addressed whether the separate accrual rule applied where plaintiffs alleged that the defendant, a landlord company, sent false monthly rental invoices that contained unlawful and hidden fees. 2004 WL 42262 at *1. The district court determined that the monthly rental checks sent within the statute of limitations period did not constitute new and independent injuries for application of the separate accrual rule. *Id.* at *2. The court explained:

> It is beyond peradventure that the plaintiffs' injury from the rent checks mailed within the past four years is not 'a new and independent injury.' The injury the plaintiffs allegedly suffered due to the rent bills mailed within the four-year statute of limitations is identical to the injury they suffered when the defendants allegedly unlawfully increased the room count. Thus, the fact that defendants continued to mail allegedly unlawful rent bills does not make plaintiffs' claim timely, as they knew or should have known about the illegal room count more than four years prior to the commencement of this lawsuit.

*Id.* In another civil RICO action, *Sasser*, the district court addressed an employer's commission policy that reduced sales consultants' pay by deducting from their commissions when customers paid late or returned items. 2001 WL 764953 at *6. The parties agreed that the "charge back" policy at issue was implemented around 1986. *Id.* The court determined that "[b]ecause plaintiffs' allegations regarding defendants' compensation and charge back policies seek to hold defendants liable for conduct and representations that began outside of the limitations period and simply continued within the limitations period, these allegations are time-barred." *Id.* at *7. As in *Pharr*, the alleged timely activities in *Sasser* were "simply the result of defendants' continued

-11-

implementation of their policies which began outside of the limitations period." *Id.*

However, the Court finds this case more analogous to the situation in *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,* 2003 WL 21507529 (S.D.N.Y. 2003). In *Maddaloni Jewelers* the plaintiff alleged that defendants began demanding illegal payments from dealers of its products. *Id.* at *1. When the plaintiff dealer did not comply with the defendants' demands, other dealers who did comply received preferential treatment. *Id.* The plaintiff alleged that it began to experience: delays in the receipt of defendants' products; defendants' refusal to provide certain products; elimination of support from defendants; and elimination of access to defendants' customer service department. *Id.* The plaintiff claimed that it received hundreds of cancelled orders from customers, which caused lost profits. *Id.* The court determined that:

> [c]ontrary to defendants' argument, not all of [plaintiff's] causes of action accrued in 1997 when the illegal payments were first demanded. Defendants' conduct resulted in continuous violations, creating multiple causes of action. . . . Each order that [plaintiff] lost was an injury to a separate business relationship between [plaintiff] and an existing customer, creating a new cause of action.

*Id.* at *3. The court concluded that the plaintiff's claims for injuries that he discovered or should have discovered within four years prior to the filing of his complaint were timely. *Id.* at *4.

In this case, as in *Maddoloni Jewelers*, the Plaintiffs allege that each illegal hiring constituted an independent injury that further depressed the Plaintiffs' wages. Their allegations of illegal hiring are more analogous to each lost Rolex customer in *Maddoloni Jewelers* than they are to the continued application of an unlawful policy beginning outside of the limitations period. Tyson does not appear to have had an official policy to engage in the hiring of illegal immigrants. Thus, there is no specific date that Plaintiffs can identify as the date that Tyson

-12-

promulgated its illegal hiring scheme. Rather, it appears that each discrete alleged illegal hiring constituted an independent action that caused new injury. Plaintiffs meet the requirements of the separate accrual test that each illegal hiring constitutes a new and independent act that inflicted new and accumulating injury on the Plaintiffs. *See Grimmett*, 75 F.3d at 513. Plaintiffs have made clear that Ms. McCoy and Ms. Lee are not seeking damages for alleged illegal hiring beyond the four-year limitations period. [Court Doc. No. 146-1, pp.6-7]. Therefore, the Court holds that Ms. McCoy's and Ms. Lee's claims for injury from illegal hirings occurring four years prior to the filing of the complaint are not time-barred. The Court expresses no opinion on the merits of Plaintiffs' substantive claims, however. For these reasons, Tysons' motion for summary judgment against Ms. McCoy and Ms. Lee will be DENIED.

**IV.    Conclusion**

After reviewing the record and the applicable law, the Court concludes that Ms. McCoy's and Ms. Lee's claims of alleged illegal hiring falling within the four-year statute of limitations period established for civil RICO claims are timely. Claims of alleged illegal hiring falling outside of the four-year limitations period are barred by the statute of limitations. Tyson's motion for summary judgment will be **DENIED**.

A separate order will enter.

                                      */s/ R. Allan Edgar*
                                      R. ALLAN EDGAR
                               UNITED STATES DISTRICT JUDGE