UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | |
|---|---|---|
| BIRDA TROLLINGER, VIRGINIA BRAVO, KELLY KESSINGER, IDOYNIA MCCOY, REGINA LEE, PATRICIA MIMS, LORI WINDHAM and ALEXANDER HOWLETT, individually and on behalf of all others similarly situated | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:02-CV-23 Chief Judge Curtis L. Collier |
| TYSON FOODS, INC., JOHN TYSON, ARCHIBALD SCHAFFER III, RICHARD, BOND, KENNETH KIMBRO, GREG LEE, KAREN PERCIVAL, AHRAZUE WILT and TIM MCCOY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM

Before the Court is Plaintiffs'[1] motion for class certification with supporting memorandum

(Plaintiffs' memorandum), pursuant to Fed. R. Civ. P. 23(b)(3) (Court File Nos. 121, 123).

Defendants[2] Tyson Foods, Inc., filed a memorandum in opposition to Plaintiffs' motion for class

certification (Court File No. 139) and Plaintiffs filed a reply brief (Court File No. 144). For the

following reasons, the Court will **GRANT** Plaintiffs' motion for class certification.

---

[1]Plaintiffs in this case are Birda Trollinger, Virginia Bravo, Kelly Kessinger, Idoynia McCoy, Regina Lee, Patricia Mims, Lori Windham and Alexander Howlett. The Court will refer to them in this memorandum as "Plaintiffs" or "named Plaintiffs."

[2]There are nine defendants in this case. They are Tyson Foods, Inc., and certain of its officers and employees, namely John Tyson, Archibald Schaffer III, Richard Bond, Kenneth Kimbro, Greg Lee, Karen Percival, Ahrazue Wilt and Tim McCoy. The Court will refer to them in this memorandum as Tyson or "Defendants."

## I.    RELEVANT BACKGROUND

Plaintiffs have brought this lawsuit against Tyson Foods, Inc., one of the largest, if not the largest, poultry companies in the United States.[3]  There have been an unusually high number of previous decisions issued in this case:  Judgment Granting Summary Judgment and Supporting Memorandum, July 16, 2002,  *Trollinger v. Tyson Foods, Inc*., 214 F. Supp. 2d 840 (E.D. Tenn. 2002) (Court File Nos. 22, 21); Reversal of Summary Judgment, *Trollinger v. Tyson Foods, Inc*., 370 F.3d 602 (6th Cir. 2004); Order Denying Motion for Summary Judgment and Supporting Memorandum, February 8, 2006 (Court File Nos. 158, 157); Memorandum Elaborating on Bench Ruling Denying Motion for Judgment on the Pleadings, September 18, 2006 (Court File No. 174); Order and Supporting Memorandum Denying Motion to Amend or Correct or to Certify Case for Interlocutory Appeal, September 29, 2006 (Court File Nos. 179, 180).

Plaintiffs filed suit in this case under the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964 (Court File No. 1). A Second Amended Complaint ("the Complaint") was filed on June 24, 2005 (Court File No. 115, Second Amended Complaint).  In the Complaint Plaintiffs allege Tyson committed acts of racketeering by engaging in a systematic policy of criminality.  Specifically, Plaintiffs claim Tyson violated predicate RICO statutes relating to the nation's law against illegal immigration.  Over some fourteen pages of the Complaint, Plaintiffs set out their allegations asserting Tyson harbored and employed illegal aliens in violation of federal law and thereby subverted  the federal laws on immigration of aliens, particularly the Immigration

---

[3]According to the Complaint, Tyson is "the world's largest processor and marketer of poultry."  (Court File No. 115, ¶ 1, Complaint).

Reform and Control Act ("IRCA"), 8 U.S.C. § 1324.[4]

In 1996, Congress amended RICO and added as predicate offenses those statutes prohibiting harboring and the knowing employment of illegal immigrants. 18 U.S.C. § 1961(1)(F) (incorporating violations of § 274 of the Immigration and Nationality Act ("INA")).[5] Section 274 of the INA, like IRCA, prohibits the employment of illegal immigrants. RICO has long been understood to be an effort by Congress to authorized private individuals to bring civil suits based upon federal criminal violations.

Plaintiffs, according to the Complaint, are individuals employed by Tyson as some point who are "legally authorized to be employed in the United States" (Court File No. 115, Complaint, ¶ 1). They are paid hourly as unskilled or semi-skilled legally authorized workers, at eight[6] chicken processing plants, owned and operated by Tyson. Plaintiffs Second Amended Complaint ("the Complaint") asserts Tyson depressed Plaintiffs' wages by knowingly employing a workforce substantially comprised of illegal immigrants (Court File No. 115, ¶ 2). Plaintiffs refer to this as the "Illegal Immigrant Hiring Scheme" (id.). Plaintiffs allege the Illegal Immigrant Hiring Scheme saved Defendant Tyson large sums of money by driving down wages at the chicken processing plants below what wages would be if the Scheme were not in existence and claim this money

_____

[4]Complaints under RICO premised on violations of the immigration laws similar to those here have been upheld. *Williams v. Mohawk Industries, Inc.* — F.3d —, No. 04-13740 (11th Cir. Sept. 27, 2006); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004); *Mendoza v. Zirkle Fruit Co.*, 301 f.3d 1163 (9th Cir. 2002).

[5]Sec. 274 is codified at 8 U.S.C. § 1324(a). The Complaint alleges violations of 8 U.S.C. §1324(a)(3)(A) and 8 U.S.C. §1324(a)(1)(A)(iii) (Court File No. 115 at ¶¶ 36, 37).

[6]The Second Amended Complaint lists eight specific Tyson chicken processing plants located in the following United States cities: Ashland, Alabama; Gadsden, Alabama; Corydon, Indiana; Sedalia, Missouri; Shelbyville, Tennessee; Center, Texas; and Glen Allen, Virginia.

belongs to Plaintiffs (id. at ¶ 60).

Plaintiffs assert the Illegal Immigrant Hiring Scheme violates RICO and is "conducted in direct contravention of the Immigration Reform and Control Act ("IRCA")" (Court File No. 123 at 2). According to the Complaint Plaintiffs were injured by Tyson's illegally violating provisions of IRCA. In their memorandum Plaintiffs trace the history and purpose of IRCA. In 1986, Congress enacted IRCA, a comprehensive scheme prohibiting the employment of illegal aliens in the United States. § 101(a)(1), 100 Stat. 3360, 8 U.S.C. § 1324a. "IRCA 'forcefully' made combating the employment of illegal aliens central to 'the policy of immigration law.'" *Hoffman Plastic Compounds v. NLRB*, 535 U.S. 137, 147 (2002) (citing *INS v. National Center for Immigrants' Rights, Inc.*, 502 U.S. 183, 194 (1991)). It did so by establishing an extensive "employment verification system," § 1324a(a)(1), designed to deny employment to aliens who (a) are not lawfully present in the United States, or (b) are not lawfully authorized to work in the United States, § 1324a(h)(3). *Hoffman*, 535 U.S. at 147. To enforce the law, "IRCA mandates that employers verify the identity and eligibility of all new hires by examining specified documents before they begin work. § 1324a(b). If an alien applicant is unable to present the required documentation, the unauthorized alien cannot be hired. § 1324a(a)(1)." *Id.* at 148.

As Plaintiffs' memorandum points out, in enacting IRCA, Congress was motivated by the effects of illegal immigration on wage levels, particularly in unskilled jobs.

> Both houses of Congress explicitly noted that the hiring of undocumented workers adversely affects American employees because alien workers, out of desperation, will work in substandard conditions and for starvation wages. Particularly affected, Congress found, are low-income and low-skilled Americans, including many members of minority groups, who compete most directly with undocumented aliens for jobs.

*A.P.R.A. Fuel Oil Buyers Group, Inc.*, 320 N.L.R.B. 408, 413-414 (1995)(citing H.R. Rep. No.

99-682 Part 1 at 47 (1986) and S. Rep. No. 99-132 at 5 (1986)).  *See also* President's Memorandum, 60 FR 7885, 7886 (memorandum for the heads of executive departments and agencies outlining and discussing his Administration's efforts at deterring illegal immigration) ("Employers who hire illegal immigrants not only obtain unfair competitive advantage over law-abiding employers, their unlawful use of illegal immigrants suppresses wages and working conditions for our country's legal workers.").  Further, the United States Supreme Court has recognized the employment of illegal aliens causes wage depression for workers who are legally employed.  *De Canas v. Bica*, 424 U.S. 351, 356-357 (U.S. 1976) ("acceptance by illegal aliens of jobs on substandard terms as to wages and working conditions can seriously depress wage scales and working conditions of citizens and legally admitted aliens; and employment of illegal aliens under such conditions can diminish the effectiveness of labor unions"); *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 892 (1984)(same).

Plaintiffs also allege Tyson "engaged in a long-term pattern and practice of violating  [the immigration law]."  Plaintiffs refer to this claimed practice as the Willful Blindness Policy (Court File No. 115 at ¶ 24).

Plaintiffs filed the Complaint on behalf of themselves and members of a proposed class. The named Plaintiffs move under Federal Rules of Civil Procedure 23(a) and 23(b)(3) to certify this lawsuit as a class action with a proposed class of  "all persons legally authorized to be employed in the United States who have been employed" at the Tyson facilities since April 1998 through the present ("the Class" or "the proposed class")(Court File No. 115 ¶¶ 1, 16, 17).[7]

---

[7]As Plaintiffs' motion clarifies, the Class seeks certification for all employees who were employed by Tyson at the eight named facilities.  Excluded from the class are temporary workers who worked at Tyson but were hired and paid by temporary employment services.

## II. <u>STANDARD OF REVIEW</u>

Deciding class certification under Fed.R.Civ.P. 23 involves a two step process. "In order to obtain class certification, plaintiff must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). Additionally, plaintiff "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Id.* As mentioned above, Plaintiffs seek class certification under Rule 23(b)(3). Rules 23(a) and 23(b)(3) provide:

> Rule 23. Class Actions
> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:...
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(a), 23(b)(3). A district court enjoys broad discretion in certifying class actions, but must exercise this discretion within the framework of Rule 23. *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

When evaluating whether to certify the class, the district court must take the allegations of plaintiffs as true, with any doubts resolved in favor of certification. *Iron Workers Local Union No.*

*17 Ins. Fund v. Philip Morris Co.*, 29 F.Supp.2d 825, 830 (N.D. Ohio 1998) (citing *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977)). Although the Court may, and often must, look beyond the bare pleadings in the case, it may not examine the merits of the parties' claims or defenses. *Garrish v. United Auto., Aerospace, and Agricultural Implement Workers of America*, 149 F.Supp.2d 326, 330 (E.D.Mich. 2001)(citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974)("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met")(internal quotations omitted)).

The Court is required to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998); *In re American*, 75 F.3d at 1079. The plaintiff has the burden of showing that all of the requirements for class certification have been met. *Id.* For purposes of certifying a class in a class action, mere repetition of the language of governing federal rule is not sufficient; there must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. *Id.*

Provision is made in the rule for altering or changing the order certifying the class action so long as that is done prior to final judgment. Fed.R.Civ.P. 23(c)(1)(C).

## III. <u>DISCUSSION</u>

In considering Plaintiffs' motion, the Court must assume all of their claims are true. It goes without saying whether Plaintiffs can prove their claims or not is still an open question.

As stated above, subsection (a) of Rule 23 contains four prerequisites which must all be met before a class can be certified. Once those conditions are satisfied, the party seeking certification

must also demonstrate that the case falls within at least one of the subcategories of Rule 23(b). Here, Plaintiffs are seeking certification under Fed. R. Civ. Proc. 23(b)(3).

It is not at all clear Tyson contests these prerequisites. As Plaintiffs' reply brief states, "Defendants do not dispute that numerosity, commonality, typicality and adequacy of representation have all been established, thus conceding Plaintiffs have met their burden with respect to Rule 23(a)(1)-(4)." Defendants' only challenges to Plaintiffs' motion are in respect to Rule 23(b)'s requirements of manageability and predominance (Court File No. 144 at 1). Even so, the Court will discuss and examine each of the Rule 23(a) and (b) factors in turn.

## A.    Requirements of Rule 23(a)

### 1.    *The Requirement of Numerosity*

The first subdivision of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Proc. 23(a)(1). "The reason for [the impracticability] requirement is obvious. Only when joinder is impracticable is there a need for a class action device." *In re American*, 75 F.3d at 1079 (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.01, at 3-4 (3d ed. 1992)).[8] There is no strict numerical test for determining impracticability of joinder. *Id.* (citing *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976) (and citations therein)). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). When class size reaches substantial proportions, however, the impracticability

---

[8]Since the time *In re American* was decided, Newberg has published a fourth edition of the treatise, Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002). The Court will use "*Newberg*" to short-cite to the fourth edition of the treatise but will not update any previous court's citations to the third edition (which will be referenced by a parenthetical: "citing *Newberg*, 3d ed., . . . ").

requirement is usually satisfied by the numbers alone. *In re American*, 75 F.3d at 1079 (citing 1 *Newberg*, 3d ed., § 3.05, at 3-26).

Before the Court may certify a class pursuant to Rule 23, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, ¶ 23.21[1] (3d ed.1998). The identity of class members, moreover, must be ascertainable by reference to objective criteria. *Garrish*, 149 F. Supp. 2d at 331 (citing *Crosby v. Social Security Admin.*, 796 F.2d 576, 580 (1st Cir.1986)). A precise definition allows the Court to determine who would be entitled to relief, who would be bound by a judgment, and who is entitled to notice of the action. See 5 MOORE'S FEDERAL PRACTICE, ¶ 23.21[3]. In this case, Plaintiffs propose to define the class as "all persons legally authorized to be employed in the United States who have been employed" at the eight Tyson facilities since April 1998 through the present, excluding temporary workers who were hired and paid by temporary employment services (Court File No. 115 ¶¶ 1, 16, 17). The Court finds this class definition is based upon readily ascertainable criteria, as a review of Tyson's employment records from April 1998 through the present should identify the precise number and names of legally-employed workers. *Garrish,* 149 F. Supp. 2d at 331 (determining a class defined as "all members of Local 594 who were on GM's active payroll at its Pontiac truck facility on the day the strike began," except for the "members of Local 594 who were responsible for the events giving rise to this litigation" was readily ascertainable by reference to objective criteria and adequately defined the class under Rule 23).

While there is no fixed minimum number required to establish numerosity, the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") has held a class of 800 suffices. *Bacon*

*v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). In the Complaint, Plaintiffs state "[t]he Class for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable. The actual number can only be ascertained through discovery of Tyson's books and records" (Court File No. 115 at ¶ 17). Plaintiffs' memorandum states the "Class in this case easily exceeds 800 as there are hundreds of workers at each Plant every day, and the Class consists of eight plants, and spans a period of more than seven years" (Court File No. 123, referencing Exhibit C to Court File No. 123, Galin Dec., ¶ 5). Given the allegations contained within the complaint and the large number of plant workers employed by Defendants spanning more than eight years at this point, the Court is satisfied joinder of all class members is impracticable.

### 2. *The Requirement of Common Questions of Law and Fact*

Rule 23(a)(2) requires that for certification there must be "questions of law or fact common to the class." The commonality requirement is interdependent with the impracticability of joinder requirement, and the "tests together form the underlying conceptual basis supporting class actions." 1 *Newberg*, § 3.10, at 271. As the Supreme Court explained in *Falcon*:

> The class-action was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S.Ct. 2545, 2557-2558, 61 L.Ed.2d 176. Class relief "is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.[']" *Id.* at 701, 99 S.Ct., at 2557. For such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Ibid.*

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982). The commonality test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re American*, 75 F.3d at 1080 (citing 1 *Newberg*, 3d ed., § 3.10, at 3-50). *See also*

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ( "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible").

There is an important check on this requirement under Rule 23(b)(3). Subdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues "predominate" over individual issues. *In re American*, 75 F.3d at 1084 (citing 1 *Newberg*, 3d ed., § 3.10, at 3-56); 2 *Newberg*, § 4.22, at 152-53. Conversely, if the predominance standard is met, the Rule 23(a)(2) prerequisite is necessarily satisfied. The Court finds issues of law and fact common to all members of the proposed class: (1) whether or not Defendants engaged in the Illegal Immigrant Hiring Scheme for financial gain in violation of RICO; and (2) whether the Illegal Immigrant Hiring Scheme wrongfully resulted in a depression of the Class's wages. Both issues lie at the heart of each Plaintiff's theory, and resolution of those questions could be dispositive. Therefore, the Court concludes commonality exists.[9]

### 3.    The Requirement of Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re American*, 75 F.3d at 1082. Put another way, "when such a relationship is shown, a plaintiff's injury arises

---

[9] For more analysis, see the Rule 23(b)(3) discussion below.

from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Id.* A plaintiff's claim is "typical" if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* (citing 1 *Newberg,* 3d ed., § 3.13, at 3-76 (footnote omitted)); *General Tel. Co.*, 446 U.S. at 330, 100 S.Ct. at 1706 ("typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims"); *Senter*, 532 F.2d at 525 n. 31 ("[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law"). Where a named plaintiff's proving his own claim would not necessarily prove anyone else's claim, the typicality requirement is not satisfied. *Sprague*, 133 F.3d at 399. "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *In re American*, 75 F.3d at 1082. (citing 1 *Newberg,* 3d ed., § 3.13, at 3-75).

In this case, the named Plaintiffs' injury is a typical result of Tyson's alleged conduct, such that the Court may properly attribute a collective nature to the challenged conduct. Specifically, Plaintiffs allege their wages were depressed as a direct result of Tyson's Illegal Immigrant Hiring Scheme. This injury is typical of the Class and it arises from the same conduct that gives claims to the proposed class members. The Court is convinced that in the named Plaintiffs' pursuit of their own claims, the named Plaintiffs will also advance the interests of the class members. Thus, the Court finds the named Plaintiffs' claims are typical of the claims of the Class.

### 4. *The Requirement of Adequacy of representation*

Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately

protect the interests of the class." Fed.R.Civ.P. 23(a). This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); 1 *Newberg*, § 3.21, at 408. *See also Smith v. Babcock*, 19 F.3d 257, 264 n. 13 (6th Cir. 1994)("[n]o class should be certified where the interests of the members are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard"). In *Senter*, the Sixth Circuit articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re American,* 75 F.3d at 1083 (citing *Senter*, 532 F.2d at 525; *Cross*, 553 F.2d at 1031 (Rule 23(a)(4) tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent"); *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13 ("adequacy of representation requirement . . . also raises concerns about the competency of class counsel and conflicts of interest")). The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members. *Id.*

The Court finds both required criteria are present in this case. First, the named Plaintiffs have a common interest with the Class in being compensated for their alleged injury caused by Tyson's Illegal Immigrant Hiring Scheme. Second, the Court has no doubt Plaintiffs will vigorously prosecute the interests of the Class through qualified counsel. Plaintiffs's counsel represents he has the resources necessary to handle class-action litigation and currently represents other Plaintiffs alleging similar RICO violations in other cases pending in sister circuits. The Court has no reason

to question counsel's representation. Therefore, the Court finds the named Plaintffs will fairly and adequately protect the interests of the Class.

**B.      Additional Requirements of Rule 23(b)(3)**

Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) employs a four-factor test addressed to the general questions of whether the common questions of law and fact of class members predominate over individual questions of class members, and whether a class action is a superior, fair and efficient method for adjudicating the controversy. *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 288 (W.D. Mich. 2001). The first part of Rule 23(b)(3) is commonly known as the predominance test. 2 *Newberg*, § 4.23, at 153. The Court will refer to the second part of Rule 23(b)(3) as the "superiority requirement." Defendants claim Plaintiffs have failed to meet their burden with respect to both Rule23(b)(3) requirements. The Court will address both arguments.

Factors to consider under the Rule are specifically noted in the Rule. According to Rule 23(b)(3), the matters pertinent to the predominance test include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. The Court will address these four matters in turn.

*1.      Individual interest in controlling claims*

First, the Court must consider the extent to which the individual class members have a strong interest in individually controlling their claims. *Saur*, 203 F.R.D. at 289. Defendants' response did not discuss this factor. Plaintiffs' Complaint states the "individual amounts of damages involved, while not insubstantial, are generally not large enough to justify individual actions" and the "costs of the individual actions would unreasonably consume the individual amounts that would be recovered" (Court File No. 115, ¶ 21(a)-(b)). In this case, as in *Saur*, the Court deems the "interest in individual law suits is minimal in that the class mechanism allows class members for a more effective and far reaching remedy than would be available to them on an individual basis." *Saur*, 203 F.R.D. at 289. As a result, the Court finds this factor weighs heavily in favor of granting Plaintiffs' motion for class certification.

### 2. *Extent and nature of other litigation in this matter*

Second, the Court must consider the extent and nature of any litigation already commenced by or against members of the class. Again, Defendants' response did not discuss this factor. As in *Saur*, Plaintiffs and their counsel are "unaware of any other litigation concerning the controversy that has been commenced by any member of the class" (Court File No. 123, p. 23). The Court is also unaware of any other litigation concerning these allegations. Tyson has not brought to the Court's attention any other such litigation. The Court finds this factor weighs in favor of granting Plaintiffs' motion for class certification.

### 3. *Desirability of concentrating litigation in this forum*

Third, the Court must consider the desirability of concentrating this suit in this forum. "In the class action context, the desirability of concentrating claims in a particular forum is relevant only when other class litigation has already been commenced else where." 2 *Newberg*, § 4.31, at 268.

Defendants' response contains a section entitled "**_Geographic Considerations_**" but the section discusses how the eight different plant locations result in "individualized issues of injury and damages." (Court File No. 139 at 18). The section does not discuss the desirability of concentrating this suit in this forum, nor can the Court identify any other section in Defendants' response which addresses this factor. This forum is a suitable forum for handling this suit because the Complaint was filed in this district[10] and the Court has been handling the case since 2002. As a result of the Court's involvement in this case, it has gained considerable familiarity with the facts and the applicable law. Also as mentioned above, the Court is unaware of any other litigation concerning these claims in any other jurisdiction. The litigation of this suit here would not pose any significant problems in terms of the Court's docket or attention to other matters. Therefore, the Court finds this factor weighs in favor of granting Plaintiffs' motion for class certification.

### 4.     Manageability

Fourth, the Court is required to consider any difficulties likely to be encountered in the management of this suit. Of the four factors listed in Rule 23(b), manageability is the "most hotly contested and the most frequent ground for holding that a class action is not superior." 2 *Newberg*, § 4.32, at 269. It is important to note the rule lists management difficulties as a matter to be considered "when *comparing the class action device to other methods of adjudicating the controversy*." *Id.* (emphasis added). A class action is improper only when "such difficulties make a class action less fair and efficient than some other method, such as individual interventions or consolidation of individual lawsuits." *Id.*(citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 346

---

[10]Lead plaintiff Birda Trollinger was employed and "victimized by the Illegal Immigrant Hiring Scheme" at the Shelbyville, Tennessee chicken processing plant, which is located in this district (Court File No. 115, ¶ 15).

(1979)(antitrust)(allowing consumers to sue for alleged antitrust violations would not result in "administrative chaos, class action harassment, or 'windfall' settlements if the district court exercise sound discretion and use the tools available").

Defendants' memorandum directly addresses this factor. Tyson contends "Plaintiffs have failed to satisfy the predominance requirement of Rule 23(b)(3). Establishing liability, injury and damages would require detailed, particularized proof of numerous individual issues."(Court File No. 139 at 7). Defendants' assert "neither liability nor injury damages can be established on a class-wide basis" in this case (id. at 8). Further, Tyson attacks Plaintiffs' methodology in determining the requisite number of RICO violations. As a result, Defendants assert individual issues relating to liability, injury and (calculation of) damages undermine any efficiencies of proceeding as a class action.

a.    Liability

"It is particularly important at this point to focus on the task before the court in considering a motion for class certification. The court is not to consider the merits of the claim; . . . . Instead, the court is only to consider whether the type of proof offered by plaintiffs . . . will be of classwide character such that class action treatment of the case will be superior to myriad individual actions." *Zuccarini v. Hoechst (In re Cardizem CD Antitrust Litig.)*, 200 F.R.D. 326, 350 (E.D. Mich. 2001) (citing *In re Commercial Tissue Products*, 183 F.R.D. 589, 596 (N.D. Fla. 1998)). The relevant inquiry here is whether generalized evidence exists which will prove or disprove Plaintiffs' claims on a simultaneous, class-wide basis. *Id.*

As mentioned above, the Plaintiffs' claims of Tyson's liability under the alleged RICO violations pertain to common issues of law and fact. Defendants claim it would be unmanageable

to prove that it "knowingly" hired 560 illegal immigrants at its facilities (Court File No. 139 at 8-13, 23-24). In its reply brief, Plaintiffs point out they "intend to prove the "knowledge" requirement through Defendants' use of the 'Willful Blindness Policy'" (Court File No. 144 at 2) (citing Court File No. 115 at ¶ 24). Plaintiffs allege this policy is "Tyson's institutionalized, regularized method of knowingly hiring illegal immigrants." (Court File No. 144 at 2).

Tyson alleges the Plaintiffs' proposal of identifying illegal workers employed by Defendants' is unmanageable. The Court is persuaded the combination of methods identified by Plaintiffs' are sufficient to show litigation in the form of a class action is preferable to any other method of adjudicating this controversy. Improperly completed I-9 forms will be cross-checked against mismatched Social Security names and numbers, Tyson's own internal identity investigations and third party notifications as outlined in Plaintiffs' memorandum and reply briefs. Provided the Plaintiffs will only include employees who were terminated by Tyson for using fake or false documentation, the Court finds that Plaintiffs will be able to identify illegal workers in a reasonably reliable and manageable way.

b.      Injury and damages calculation

Defendants next argue Plaintiffs are unable to prove injury and damages on a class-wide basis. Plaintiffs allege the centralized "Willful Blindness Policy" predominates over any individual issues as to causation and damages. As the Plaintiffs allege the wage rates were depressed for *all* workers as a result of the RICO violations, the *fact* that class-wide damages resulted from the RICO violations goes to the merits of Plaintiffs' claim. Such consideration is improper in the class-certification determination.

Defendants' class-wide damages argument goes to the difficulty and imprecision of

calculating damages on a class-wide basis, alleging individual characteristics of the eight chicken-processing plants predominate over the common issues of fact and law. Defendants' expert's declaration attacks Plaintiffs' expert's proposed method of damages calculation of damages because each plaint's individual characteristics makes their impact on wages "not consistent across time or plants and is difficult to isolate"(Court File No. 139, Attachment 2, ¶96). Similar arguments were made by the defendants in *Mendoza v. Zirkle Fruit Co.*, a case which also involves an alleged hiring scheme of illegal alien employment which resulted in wage depression. *Mendoza v. Zirkle Fruit Co.*, 222 F.R.D. 439, 447 (E.D. Wash. 2004)("[t]he defendants assert that the impact of the alleged hiring scheme upon the plaintiffs' wages will vary dramatically from employee to employee based upon a number of factors. These include the site at which the employee worked; the type of job he performed; and whether he was paid by the hour or by his productivity").

At this point, the Court is not concerned with these asserted deficiencies. In ruling on Plaintiffs' class certification motion, the Court need not determine whether or not the expert's, Professor Borjas's, damage calculation model can survive a Daubert challenge, whether the underlying data is sufficiently accurate and reliable to adequately support his opinion, or whether Plaintiffs' wage suppression evidence on the whole will be sufficient to withstand a Rule 56 motion. *Bert v. AK Steel Corp.,* 2006 WL 1071872,* 7 (S.D. Ohio April 24, 2006). At the class certification stage, "it is not necessary to identify specific benchmarks or methodology to ascertain the amount of damages." *Zuccarini*, 200 F.R.D. at 349. "'It is sufficient to note at this stage that there are methodologies available, and that Rule 23(c)(1) and (d) allow ample flexibility' to deal with the individual damages issues that may develop." *Id*. (stating "Defendants' complaints that Plaintiffs' methodology and its damage calculations are too imprecise for class certification are to no avail")

(citing *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996)).  *See also In re NASDAQ*, 169 F.R.D. at 528 ("Courts are generally loath to deny class certification based on speculative problems with case management," concluding doing so violates the purpose of Rule 23).

At this stage, Plaintiffs are required to establish a "colorable" basis for establishing damages. *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208, 219 (S.D. Ohio 2003) (at the class certification stage, the "Court's task is not to determine whether any of [plaintiff's expert's methods of proving class-wide impact] are ultimately meritorious but rather whether they are "colorable" and not "fatally flawed").  In *Mendoza*, the district court stated

> the jury will be asked to determine the rates of compensation that various jobs would have merited but for the alleged hiring scheme. Once the jury establishes the rates that should have been paid (if, in fact, the jury finds for plaintiffs), the jury can apply those rates to particular employees. This should not be an insurmountable task if, as seems to be the case, the defendants have records of the hours worked by their employees and the rates at which the employees were paid. Thus, the need for individual damage calculations does not preclude a finding of predominance.

*Mendoza*, 222 F.R.D. 447-48(citing *Blackie v. Barrack*, 524 F.2d 891, 905 (1975)("The amount of damages is invariably an individual question and does not defeat class action treatment.")).[11]  The Court finds the reasoning in *Mendoza* persuasive and applicable to the facts in this case.  Therefore, the Court concludes the individual damage calculations do not preclude a finding of predominance or manageability.

As in *Saur*, the Court finds "no significant problems associated with the class action mechanism and the use of the mechanism appears likely to achieve economies of time, effort and expense in resolving legal issues of class members."  *Saur*, 203 F.R.D. at 289.  The maintenance of

---

[11]*Blackie* continues to be cited for this provision.  *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003).

the class action is likely to delay trial, but not significantly. The Court is convinced the Class will

be manageable. Indeed, the inefficiencies presented by a contrary result are massive

> Separate proceedings would produce duplicate efforts, unnecessarily increase the costs of litigation, impose an unwarranted burden on this Court and other courts throughout the country, and create the risk of inconsistent results for similarly situated parties. Additionally, the cost associated with individual claims may require claimants with potentially small claim amounts to abandon otherwise valid claims simply because pursuing those claims would not be economical.

*In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 625 (N.D. Ga. 1997). Overall, the

factors specified in the Rule favor a conclusion that common questions predominate over individual

questions and that a class action is a superior, fair and efficient method of adjudication. Therefore,

the Court finds the Class qualifies for certification under 23(b)(3).

## IV.     CLASS MANAGEMENT CONFERENCE

Given that the Court has decided the law requires it to grant class certification under Rule

23(b)(3), the Court must direct to class members the best notice of this action and to provide them

an opportunity to "opt out." The Court under Rule 23(d) is authorized to make such appropriate

orders as will advance the litigation and the best interest of justice. Accordingly, the court will set

a Management Conference at **10:00 a.m. on January 29, 2007**, in chambers, Room 317, 900

Georgia Avenue, Chattanooga, Tennessee, to discuss the requirement of Rule 23(b)(3) and such

other matters as will ensure this case proceeds expeditiously and fairly.

## V.     CONCLUSION

In accordance with this Memorandum, an Order shall enter granting the Motion for Class

Certification (Court File No. 123).

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**