UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | | |
|---|---|---|
| BIRDA TROLLINGER, VIRGINIA BRAVO, KELLY KESSINGER, IDOYNIA MCCOY, REGINA LEE, PATRICIA MIMS, LORI WINDHAM and ALEXANDER HOWLETT, individually and on behalf of all others similarly situated | ) ) ) ) ) ) ) ) | No. 4:02-CV-23 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Chief Judge Curtis L. Collier |
| TYSON FOODS, INC., JOHN TYSON, ARCHIBALD SCHAFFER III, RICHARD BOND, KENNETH KIMBRO, GREG LEE, KAREN PERCIVAL, AHRAZUE WILT and TIM MCCOY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM**

Before the Court are Plaintiffs' Motion to Approve Class Notice (Court File No. 350), Defendants' Response (Court File No. 370), Plaintiffs' Reply (Court File No. 372), Defendants' Motion for a More Definite Class Definition (Court File No. 225), Plaintiffs' Response (Court File No. 243), and Defendants' Reply (Court File No. 353). Those filings concern the related issues of the proper scope of the class definition and the appropriate language for the class notice.

Also before the Court are Plaintiffs' Motion to Compel Distribution of Class Notice (Court File No. 337), and Defendants' Response (Court File No. 362).

After reviewing the parties' submissions, this Court will **GRANT** in part and will **DENY** in part Plaintiff's Motion to Approve Class Notice (Court File No. 350), and will **GRANT** in part and will **DENY** in part Defendants' Motion for a More Definite Class Definition (Court File No.

225). Also, the Court will **DENY** Defendants' Motion to Reconsider Class Certification.[1] The Court will **APPROVE** the class notice language provided as Appendix A to the accompanying Order.

The Court will **DENY** Plaintiffs' Motion to Compel Distribution of Class Notice (Court File No. 337). The Court will **DENY** Defendants' Motion to Impose Sanctions pursuant to Fed. R. Civ. P. 11 against Plaintiffs for alleged baseless accusations in bad faith (Court File No. 362).[2]

I.     **ISSUES BEFORE THE COURT**

Plaintiffs Birda Trollinger et al. ("Plaintiffs") and Defendants Tyson Foods, Inc., *et al.* ("Defendants") disagree as to eight primary issues involving class definition, class notice language, and the financial responsibility for distribution of the class notice, as follows:

A.     Plaintiffs seek recovery for wage suppression from April 2, 1998 to the present (Plaintiffs' Second Amended Complaint, Court File No. 115). What is the appropriate date on which to close the class to new Tyson employees?[3]

---

[1]Defendants move the Court to take action in their response to Plaintiffs' motion (Court File No. 370, p. 4), rather than submitting their own motion. However, Plaintiffs responded to Defendants' request in their reply (Court File No. 372, pp. 3-4). The Court sees no inherent unfairness in considering Defendants' response as a motion here, and does so for the sake of judicial economy.

[2]Rather than file a separate motion, as is customary, Defendants embedded a motion for sanctions in their Response to the Motion to Compel Distribution of Class Notice (Court File No. 362). For the sake of judicial economy, this Court views Defendants' request in their response as a motion, and addresses it accordingly. Since the motion for sanctions is denied, the Court need not consider whether Defendants complied with the further requirements for filing such a motion under Fed. R. Civ. P. 11(c)(1)(A).

[3]Defendants' Memorandum in Support of a More Definite Class Definition, Court File No. 226, p. 4; Plaintiffs' Response to the Motion for a More Definite Class Definition, Court File No. 243, pp. 3-4; Defendants' Reply for a More Definite Class Definition, Court File No. 353, p. 3.

B. Should the places at which the potential class members worked be classified as "complexes" or "plants"? "Plants" refer only to the "chicken processing plants," whereas "complexes" include the plants and buildings separate from the production operation, including feed mills, hatcheries, and other buildings and operations.[4]

C. Some of the potential class members may not be able to read or converse in English. How should the class notice address this issue?[5]

D. Should the definition of the class include a description of the claim?[6]

E. Are the methods and proof by which Plaintiffs identify legally-authorized workers, and thus eligible class members, sufficient for the purposes of class definition and notice?[7]

F. Should Defendants be compelled to distribute class notice to their current employees?[8]

G. Should Defendants be responsible for the costs of distributing class notice to their former employees at the chicken processing plants they no longer own in Ashland and Gadsden, Alabama?[9]

---

[4] Defendants' Memorandum in Support of a More Definite Class Definition, Court File No. 226, pp. 3-4; Plaintiffs' Response to the Motion for a More Definite Class Definition, Court File 243, p. 2; Defendants' Reply for a More Definite Class Definition, Court File No. 353, p. 2; Defendants' Response to the Motion to Compel Distribution of Class Notice, Court File No. 362, p. 2, n. 1; Defendants' Response to the Motion to Approve Class Notice, Court File No. 370, p. 2.

[5] Defendants' Response to the Motion to Approve Class Notice, Court File Nos. 370, pp. 2-3; Plaintiffs' Reply to Approve Class Notice, Court File No. 372, p. 2.

[6] Defendants' Memorandum in Support of a More Definite Class Definition, Court File No. 226, p. 4; Plaintiffs' Response to the Motion for a More Definite Class Definition, Court File No. 243, p. 3; Defendants' Reply for a More Definite Class Definition, Court File No. 353, p. 3.

[7] Defendants' Response to the Motion to Approve Class Notice, Court File No. 370, p. 4; Plaintiffs' Reply to Approve Class Notice, Court File No. 372, pp. 3-4.

[8] Plaintiffs' Memorandum in Support of Compelling Distribution of Class Notice, Court File Nos. 338, pp. 2-3; Defendants' Response to the Motion to Compel Distribution of Class Notice, Court File No. 362, pp. 2-4.

[9] Plaintiffs' Memorandum in Support of Compelling Distribution of Class Notice, Court File No. 338, pp. 4-5; Defendants' Response to the Motion to Compel Distribution of Class Notice, Court File No. 362, pp. 4-5.

H. Should this Court impose sanctions pursuit to Federal Rule of Civil Procedure 11 against Plaintiffs for submitting allegedly baseless claims?[10]

The parties agree it is appropriate for Plaintiffs' counsel to post the class notice and other relevant court documents on its website, for the benefit of class members and potential class members (Defendants' Response to the Motion to Approve Class Notice, Court File No. 370, p. 4; Plaintiffs' Reply to Approve Class Notice, Court File No. 372, p. 4, n. 5). Courts have recognized the value of the internet in disseminating information to class members. *See* Manual for Complex Litigation (Fourth) § 21.311 (2006) (Thomson/West (2006), pp. 385-86). The Court **GRANTS** Defendants' motion,[11] to which Plaintiffs have consented (Court File Nos. 370, p. 4; 372, p. 4, n. 5), and requires Plaintiffs' counsel to provide class notice via its website, as provided for in this Court's class notice (attached as Appendix A).

## II. DISCUSSION

### A. Class Membership will be closed on the date of the accompanying Court Order.

Plaintiffs seek recovery for wage suppression from April 2, 1998 to the present, as the alleged racketeering activities are on-going (Plaintiffs' Second Amended Complaint, Court File No. 115, ¶ 59). For practical purposes, Plaintiffs suggest the class closes on the date notice is sent (Plaintiffs' Response to the Motion for a More Definite Class Definition, Court File No. 243, p. 4). Defendants seek to close the class as of October 10, 2006, when this Court certified the class

---

[10] Defendants' Response to the Motion to Compel Distribution of Class Notice, Court File No. 362, pp. 4-7.

[11] As it was not addressed in Plaintiffs' Motion, Court File No. 350, the Court considers Defendants' Response a motion for purposes of granting the consented posting of relevant class documents on the Plaintiffs' counsel's website.

4

(Defendants' Reply for a More Definite Class Definition, Court File No. 353, pp. 3-4).

Plaintiffs are concerned potential class members will be excluded by the cut-off date, since the claims allege wage depression which is still on-going (Plaintiffs' Response to the Motion for a More Definite Class Definition, Court File No. 243, p. 4). Defendants are concerned a vague cut-off date will cause the class to continue to grow even after the notice period has expired (Defendants' Memorandum in Support of a More Definite Class Definition, Court File No. 226, p. 4).

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23(c)(1)(C), this Court has the authority to alter or amend the class definition before the final judgment. *Accord Daffin v. Ford Motor Co.,* 458 F.3d 549, 554 (6th Cir. 2006), *citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after the certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation. For such an order, particularly during the period before any notice is sent to members of the class, is inherently tentative.") (internal citation omitted). In doing so, this Court considers the same factors as it did when certifying the class under Fed. R. Civ. P. 23(b)(3), including the interests of the class members, the desirability in collecting the claims within the class, and the difficulties in the management of the class action.

Should the cut-off date be set too early, all parties are prejudiced. Plaintiffs will be unable to fully vindicate the full scope of the alleged damages suffered by on-going unlawful behavior. Defendants will lose some of the benefit of a class action suit because those excluded may bring another class action suit to vindicate their rights. The Court will lose some of the benefit from judicial economy in dealing with a potential class action suit from those excluded.

A late cut-off date is problematic because class members must have full opportunity to opt-out of the class. *See Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 395 (1996), *citing*

5

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Those who gain membership to the class at the end of the cut-off date, should it be too close to trial, would be deprived of their due process rights to opt-out and bring their own actions. *See id*. The cut-off date must be sufficiently early to afford potential class members a full opportunity to consider the class notice. *See id*.

In light of the above considerations, the Court sees no benefit in restricting the class to the date of the class certification order. Conversely, allowing the cut-off date to extend to the date Plaintiffs distribute the class notice is too vague, and raises a very practical problem - on the day the notices are distributed, Plaintiffs would have to conduct additional inquiries to determine new class members hired by Tyson on that day.

In light of these concerns, the Court will close class membership on the date of the Court Order accompanying this Memorandum.

**B. Only employees at the Tyson chicken processing plants will be eligible for class membership.**

At different times throughout the litigation, the term "facilities" has been used to identify the places where potential class members worked (*e.g.* Plaintiffs' Memorandum in Support of Class Certification, Court File No. 123, p. 1 (identifying the Tyson locations as both "facilities" and "chicken processing plants.")) Defendants argue "facilities" is too vague, as it could refer to either "chicken processing plants" or "complexes," which include the chicken processing plants as well as the feed mills, hatcheries, and other buildings and operations located on the complexes (Defendants' Memorandum in Support of a More Definite Class Definition, Court File No. 226, p. 3). Defendants move the Court to define the class in terms of "chicken processing plants," and refer to Plaintiffs' Second Amended Complaint, which reads: "Plaintiffs bring this action on behalf of themselves and all other persons, legally authorized to be employed in the United States, who have

been employed by Tyson at the facilities as hourly wage earners. Each facility is a large chicken processing plant employing at least several hundred persons." (Court File No. 115, ¶ 16). Plaintiffs argue they intended the class to encompass employees from "complexes," not just "plants," and move to have the class definition clarified accordingly (Plaintiffs' Response to the Motion for a More Definite Class Definition, Court File No. 243, p. 2).

As previously stated, this Court has the authority to alter or amend the class definition before the final judgment, pursuant to Fed. R. Civ. P. 23(c)(1)(C). *Accord Daffin,* 458 F.3d at 554, *citing Falcon*, 457 U.S. at 160. In doing so, the Court considers whether subsequent developments necessitate a modification and whether a modification would be fair to the litigants. Ideally, litigants would provide the Court with the evidence, likely obtained during discovery, which necessitates a modification of the class definition, including when such information was obtained. Here, such submissions and accompanying evidence could have shed light on the following issues the Court must consider: (1) Did Plaintiffs provide timely notification to the Court of its mistakenly narrow use of the phrase "chicken processing plants"? (2) Did the parties' conduct during discovery demonstrate an understanding as to the functional scope of the class? If so, did the Plaintiffs and Defendants conduct discovery relating to the "complexes" as a whole, or just the "chicken processing plants"? These questions determine whether a broad or narrow definition of the class is both fair and practical. For example, if the majority of discovery conducted in this case was limited to "chicken processing plants," the litigation would be unable to proceed under the broader definition of "complexes." Alternatively, if the discovery encompassed the complexes, or was of a nature so as to be unaffected by the distinction, this Court might allow the broader class definition as it would be the most efficient way to deal with claims predominated by the same facts.

7

Neither Plaintiffs nor Defendants have spoken on these issues, so the Court must review the record to find facts relevant to whether broadening the class is fair and feasible. On August 24, 2005, Plaintiffs defined their class in terms of "chicken processing plants," not "complexes" including feed mills, hatcheries, and other buildings and operations (Plaintiffs' Second Amended Complaint, Court File No. 115, ¶ 16). It is possible Plaintiffs only became aware of their misuse of terminology, if that is indeed what it is, during the discovery period after filing. If that is the case, Plaintiffs were obliged to inform the Court as soon as possible to correct the error. Here, Plaintiffs raised the issue on February 12, 2007 (Plaintiffs' Response to the Motion for a More Definite Class Definition, Court File No. 243, p. 2), approximately a year and a half after their Second Amended Complaint, without any indication of when or how they discovered their definition was too narrow. Without evidence to the contrary, the Court assumes Defendants understood Plaintiffs' complaint as it was clearly written, i.e. the class consisted of "chicken processing plants." It would be unfair to now alter the definition, enlarging the class (to what extent, neither party has shown or even speculated),[12] particularly in light of the scheduled trial on March 3, 2008.

Therefore, the Court must accept Plaintiffs' original plain language in defining their class: only employees at the Tyson chicken processing plants will be eligible for class membership. The Court will **GRANT** in part Defendants' Motion for a More Definite Class Definition and define "facilities" as "chicken processing plants" (Court File No. 225).

**C.      Plaintiffs must include a Spanish translation of the class notice.**

Litigants agree some accommodation is required to potential class members who lack

---

[12]Neither party has provided evidence nor even speculated as to the number of potential class employees which would be added should the Court accept a broader definition of "facilities." The Court assumes the number is significant, as it has been the subject of considerable controversy.

sufficient competency in English. Plaintiffs wish to address the issue by including the following in the class notice: "Should you require it, you will be contacted by a Spanish-speaker." (Plaintiffs' Proposed Notice to Class, Court File No. 350, Exhibit A, p. 5). Defendants argue a "significant number" of the potential class members will require a Spanish notification, so Plaintiffs should mail the notices in English and Spanish (Defendants' Response to the Motion to Approve Class Notice, Court File No. 370, pp. 2-3). Defendants also claim some potential class members would be unable to converse sufficiently in English or Spanish, and may require another language (*id.*). As such, Plaintiffs should provide access to translators for such potential class members in the language of their choice (*id.*).

This Court is charged with "direct[ing] to class members the best notice practicable under the circumstances. . ." Fed. R. Civ. P. 23(c)(2)(B). Furthermore, multilingual distribution of class notice is not a novel approach in situations where class members will not be adequately informed by English-only class notices. *See, e.g., Montelongo v. Meese*, 803 F.2d 1341, 1352 (5th Cir. 1986), *reh'g denied*, 808 F.2d 56 (1986), *cert. denied*, 481 U.S. 1048 (1987) ("the court required plaintiffs to mail individual notice in English and Spanish to all persons they could reasonably locate. . ."); *Mendoza v. Zirkle Fruit Co.*, 222 F.R.D. 439, 442 (E.D.Wash. 2004). In determining whether class notice must be distributed in multiple languages to qualify as the "best notice practicable," this Court would prefer to review evidence and reasoned estimates from both parties relating to the number of potential class members likely to require accommodation in a language other than English; the percentage of such potential class members who would be suitably informed were the notice distributed in Spanish; and, the additional costs imposed by requiring distribution in both English and Spanish. Such information would assist the Court in determining how effective dual-language

9

distribution would be, and whether, in relation to the additional costs imposed, it would be the "best notice practicable."

Defendants assert "a significant number of potential class members" speak Spanish, and "many authorized workers" speak languages ranging from Vietnamese to Somali (Defendants' Response to the Motion to Approve Class Notice, Court File No. 370, p. 3). Defendants note "a class member who needs an interpreter will not be able to read through five pages of an English-language class notice in order to discover their [sic] right to an interpreter" (*id.*). Plaintiffs do not dispute or adopt Defendants' concerns, but rather explain multilingual distribution can be considered after the content of the notice is finalized (Plaintiffs' Reply to Approve Class Notice, Court File No. 372, p. 2).

The Court agrees one sentence on the final page of the notice is inadequate to inform class members not fluent in English of the availability of translators (*see* Defendants' Response to the Motion to Approve Class Notice, Court File No. 370, p. 3). The Court is faced with a difficulty, however. Potential class members without proficiency in English will be incapable of reading any English sentence informing them of their rights to a translator. Regardless, it is not practicable to include a translation of the notice in every language, nor even to include one sentence in each language to inform a potential class member to call for a translator concerning the contents of the notice. Defendants assert "a significant number of potential class members" will require a Spanish translation (Defendants' Response to the Motion to Approve Class Notice, Court File No. 370, p. 3). Plaintiffs have not disputed that fact, and Defendants knowledge of the characteristics of their own employees is more informed than that of the Court. Neither party has argued the cost of including a Spanish translation would make the dissemination of the class notice impracticable.

10

As such, the Court will **DENY** in part Plaintiffs' Motion (Court File No. 350), and require Plaintiffs to include a true and accurate Spanish translation of the class notice.

### D. The definition of the class should include a description of the claim.

Defendants request the class definition include a description of the claim (Defendants' Memorandum in Support of a More Definite Class Definition, Court File No. 226, p. 4). Plaintiffs argue such a description "would allow *Tyson* to determine which hourly employees it believes should be included or excluded from the class based on whether it believes such wages may have been susceptible to wage depression" (Plaintiffs' Response to the Motion for a More Definite Class Definition, Court File No. 243, p. 3). Plaintiffs' objection appears to be based upon a misunderstanding of Defendants' request.

The Manual for Complex Litigation (Fourth) instructs "[t]he class definition should describe the operative claims, issues, or defenses, such as injury resulting from securities fraud or denial of employment on account of race." § 21.222 (2006) (Thomson/West (2006), p. 337). Fed. R. Civ. P. 23(c)(2)(B) already requires the Court to include "the class claims, issues, or defenses" in the class notice.

Adding a description of the claim to the class definition does not allow Defendants to subjectively determine which employees' wages were depressed, then unilaterally exclude those employees from the class (*see* Plaintiffs' Response to the Motion for a More Definite Class Definition, Court File No. 243, p. 3). Such a determination is precisely the question at issue in this lawsuit, and cannot be decided unilaterally by Defendants due to an addition of language to the class definition describing the nature of the claim. The added language, "who allege that their wages were depressed as a result of Tyson's alleged knowing hiring of illegal immigrants for the purpose of

depressing wages," defines the class to include employees who *allege* their wages were depressed, not whose wages necessarily were (*see* Appendix A). It will take a final decision by the Court or jury to determine whether any given class member's wages were depressed.

The Court will **GRANT** in part Defendants' Motion for a More Definite Class Definition (Court File No. 225) and add a description of the claim to the class definition, as provided in Appendix A.

### E. Plaintiffs' identification of potential class members, those legally authorized to work, is sufficient for the purposes of defining and providing notice to the class.

The class definition is limited to those employees "who are legally authorized to work in the United States" (Appendix A). This excludes any employees who would not be legally authorized to work in the United States. This exclusion is fundamental because employees without legal authorization are an alleged proximate cause of the damages sought, i.e. a suppression of wage rates for legally-authorized employees.

Defendants dispute the sufficiency of Plaintiffs' method of identifying employees who are not legally authorized to work in the United States (Defendants' Response to the Motion to Approve Class Notice, Court File No. 370, p. 4). Defendants are simply repeating their argument, previously raised when opposing class certification on September 12, 2005 (Court File No. 139, pp. 19-23). Defendants have failed to provide any additional legal or factual basis which might warrant the Court to reconsider its previous decision.

As this Court previously decided in certifying Plaintiffs' class, "Plaintiffs will be able to identify illegal workers in a reasonably reliable and manageable way." *Trollinger v. Tyson Foods, Inc.*, 2006 WL 2924938, at *10 (E.D.Tenn. Oct. 10, 2006); Court File No. 182, p. 18. In that decision, the Court considered the arguments posed by both parties (Plaintiffs' Motion for Class

Certification, Court File No. 121, pp. 9-10; Defendants' Response to the Motion for Class Certification, Court File No. 139, pp. 19-23; Plaintiffs' Reply to Class Certification, Court File No. 144, pp. 2-4) and the analysis of similar factual circumstances in *Mendoza v. Zirkle Fruit Co.*, 222 F.R.D. 439, 442 (E.D.Wash. 2004). As previously stated, Defendants have not provided any clear reason why the Court's prior determination is no longer an accurate depiction of the facts and law involved in this case, and upon review, the Court has not found one.

Therefore, this Court adheres to its prior determination of the sufficiency of Plaintiffs' identification methods, and declines to exercise its power to amend, alter, or decertify Plaintiffs' class. *See* Fed. R. Civ. P. 23(c)(1)(C); *accord Daffin,* 458 F.3d at 554, *citing Falcon*, 457 U.S. at 160. The Court will **DENY** Defendants' motion (Court File No. 370).[13]

### F. Defendants are not compelled to distribute class notices to their current employees.

Plaintiffs seek to have Defendants distribute the class notices to their current employees in conjunction with paycheck distribution (Plaintiffs' Memorandum in Support of Compelling Distribution of Class Notice, Court File No. 338, pp. 2-3). Many courts have required class notices to be included in periodic mailings or other distributions to reduce the costs of distributing the notices. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 n.22 (1978); *In re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 n.19 (S.D.N.Y. 1996).

Plaintiffs rely on *Oppenheimer* to support their motion (Plaintiffs' Motion to Compel Distribution of Class Notice, Court File No. 337, p. 2). Unlike *Oppenheimer*, however, Defendants' distribution of paychecks would not provide the "best notice practicable" to inform class members.

---

[13]The Court treats Defendants' request for reconsideration of the Court's decision to certify the class as a motion, as explained in footnote 1.

*See* Fed. R. Civ. P. 23(c)(2)(B). Defendants use computer-generated, sealed paychecks; class notice could not be inserted into the same envelopes for distribution (Defendants' Response to the Motion to Compel Distribution of Class Notice, Court File No. 362, p. 3). To the extent it might be possible for Defendants to distribute the class notices as a separate set of papers with the paycheck, this Court is not confident an employee, having just received his or her paycheck, will give adequate attention to a mass-produced hand-out. Class members are more likely to fully consider a class notice received through first-class mail, which is the norm for distribution.

As such, the Court will **DENY** Plaintiffs' Motion to Compel Distribution of Class Notice with respect to Tyson Food, Inc.'s current employees (Court File No. 337).[14]

### G. Defendants are not responsible for the costs of distributing class notice to their former employees at the chicken processing plants in Ashland and Gadsden, Alabama.

On or before May 25, 2007, Tyson Foods, Inc. sold poultry complexes in Ashland and Gadsden, Alabama.[15] Plaintiffs argue Defendants concealed those sales from Plaintiffs and the Court in bad faith, and thus should bear the costs of distribution to any potential class members associated with those plants (Plaintiffs' Memorandum in Support of Compelling Distribution of Class Notice, Court File No. 338, pp. 4-5).

---

[14]Defendants appear to have consented to assist the class notification process to some extent. In a letter between counsel, dated January 23, 2007, Defendants' counsel expressed his willingness to have class notice posters placed at a primary congregation point within each plant (Court File No. 362, Attachment 1, Letter from Frank R. Volpe to Howard Foster, January 23, 2007). The Court agrees this is an appropriate method to further inform class members, in addition to first-class mailings and internet postings, and hopes the parties can agree to any specifics involved without the need for Court intervention.

[15]Tyson Foods, Inc., Press Release: May 25, 2007, Springdale, Ark., http://www.tyson.com/Corporate/PressRoom/ViewArticle.aspx?id=2732 (last visited Nov. 1, 2007).

Plaintiffs argue this Court should impose sanctions on Defendants for needlessly increasing the costs of litigation (*id.*). Plaintiffs reason, if Defendants had not sold the two plants, Defendants would have been required to distribute class notice to its employees at those plants (*id.*). Because the plants are no longer under the ownership of Defendants, Plaintiffs are now responsible for the cost of distributing class notice to potential members via first-class mail (*id.*). Defendants should bear the costs because they knew the plants might be sold at the time they agreed to cooperate with Plaintiffs in disseminating class notice (*id.*).

Since the Court has already determined Defendants are not responsible for disseminating class notice with paychecks to their *current* employees, Plaintiffs' argument is moot; Defendants would not have been responsible for distributing class notice in the plants in Ashland and Gadsden, even if Defendants still owned those plants. Plaintiffs remain responsible for distribution of the class notice via first-class mail to potential class members who worked for Defendants at the Ashland and Gadsden, Alabama chicken processing plants. The Court will **DENY** Plaintiffs' Motion to Compel Distribution of Class Notice with respect to former employees of Tyson Foods, Inc. (Court File No. 337).

### H. This Court declines to impose sanctions on Plaintiffs for submitting allegedly baseless claims against Defendants.

Defendants move this Court to impose sanctions under Fed. R. Civ. P. 11 against Plaintiffs for accusing Tyson Foods, Inc. of misconduct concerning the sale of their Ashland and Gadsden, Alabama, complexes without factual basis; intentionally misquoting case law; demanding sanctions without providing legal authority to do so; and, making factual statements to the Court which are not supported by the record (Defendants' Response to the Motion to Compel Distribution of Class Notice, Court File No. 362, pp. 4-7).

This Court has the authority to sanction an attorney for advancing a point of view it deems to be frivolous under Fed. R. Civ. P. 11. *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005). Before imposition of sanctions, the Court must give counsel a reasonable opportunity to respond. Fed. R. Civ. P. 11(c).

At the present time, both parties have considerable obligations in connection with this case, and the Court concludes it would not be in the best interest of the class were Plaintiffs' counsel simultaneously defending itself against potential sanctions. The Court will **DENY** Defendants' motion[16] for sanctions against Plaintiffs, but there is not need for the Court to remind *both* parties of the Court's authority pursuant to Fed. R. Civ. P. 11(c)(1)(B) to impose sanctions on its own initiative.

As explained throughout this memorandum, the Court is best served by a full appraisal of the law *and* facts underlying every issue in the motions, responses, and replies. As both parties have conducted rigorous discovery, the parties are in the best position to inform the Court as to the relevant facts associated with their various arguments. Court filings are more than simply assertions of the will of the parties; as Thomas Jefferson said, "a lawyer without books would be like a workman without tools." The Papers of Thomas Jefferson, vol. 1, p. 24, ed. Julian P. Boyd, et al. (1950).

### III.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** in part and will **DENY** in part Plaintiff's Motion to Approve Class Notice (Court File No. 350), and will **GRANT** in part and will **DENY** in

---

[16]The Court will treat Defendants' request for sanctions against Plaintiffs as a motion, even though it was filed as part of Defendants' response, as explained in footnote 2.

part Defendants' Motion for a More Definite Class Definition (Court File No. 225). Also, the Court will **DENY** Defendants' Motion to Reconsider Class Certification.[17] The Court will **APPROVE** the class notice language provided as Appendix A to the accompanying Order.

The Court will **DENY** Plaintiffs' Motion to Compel Distribution of Class Notice (Court File No. 337). The Court will **DENY** Defendants' Motion to Impose Sanctions pursuant to Fed. R. Civ. P. 11 against Plaintiffs for alleged baseless accusations in bad faith (Court File No. 362).[18]

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[17] The Court will treat Defendants' request for reconsideration of the Court's decision to certification the class as a motion, as explained in footnote 1.

[18] The Court considers Defendants' response as a motion for the limited issue of sanctions.