UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | | |
|---|---|---|
| BIRDA TROLLINGER, VIRGINIA BRAVO, KELLY KESSINGER, IDOYNIA MCCOY, REGINA LEE, PATRICIA MIMS, LORI WINDHAM and ALEXANDER HOWLETT, individually and on behalf of all others similarly situated | ) ) ) ) ) ) ) ) | No. 4:02-CV-23 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Chief Judge Curtis L. Collier |
| TYSON FOODS, INC., JOHN TYSON, ARCHIBALD SCHAFFER III, RICHARD, BOND, KENNETH KIMBRO, GREG LEE, KAREN PERCIVAL, AHRAZUE WILT and TIM MCCOY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiffs Birda Trollinger, *et al*., ("Plaintiffs") brought this lawsuit against defendant Tyson Foods, Inc. *et al.,* ("Defendants") under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs proceeded under a somewhat novel and untested theory of liability based upon its claims Defendants employed illegal aliens at its facilities.

After years of litigation, the Court, on February 13, 2008, granted Defendants' motion for summary judgment, and issued judgment against all claims of Plaintiffs (Court File No. 534). On February 28, 2008, Plaintiffs moved for reconsideration, but only as to the Tyson Foods, Inc. ("Tyson") facility in Corydon, Indiana from 1999 to 2000, based upon evidence Plaintiffs alleged was newly-discovered and rectified the deficiencies in their case upon which summary judgment was granted (Court File No. 535). On March 3, 2008, Plaintiffs filed a motion to add additional

evidence to their motion for reconsideration as it pertained to the Corydon facility from 2000 to 2005 (Court File No. 543). On April 18, 2008, Plaintiffs filed another motion to add additional evidence for the Corydon facility from 1999-2000 (Court File No. 548).

For the following reasons, the Court will **DENY** Plaintiffs' motions for reconsideration (Court File Nos. 535, 543, 548).

**I.     FACTS**

The full facts of this case can be found in this Court's memorandum explaining it grant of summary judgment (Court File No. 533). Some additional facts are provided here specifically relevant to Plaintiffs' motions.

According to the Scheduling Order, the parties made their initial discovery disclosures on September 17, 2004 (Court File No. 32, p. 2). At that time, discovery was set to end on May 10, 2006, with a trial date set for November 7, 2006 (*see id.*). This deadline, as most if not all other deadlines in this case, was extended multiple times (*see, e.g.,* Court File Nos. 263, 267, 272, 281, 418). In the First Management Order, the parties represented they would complete all discovery by July 30, 2007 (Court File No. 241, p. 7). Thus, from the time between their initial disclosures and the close of discovery,[1] the parties had three years, three months, and thirteen days.

Within ten days[2] after this Court granted summary judgment (Court File No. 534; February 13, 2008), Plaintiffs filed a motion for this Court to reconsider that decision pursuant to Fed. R. Civ.

---

[1] As previously stated, the parties were given numerous time extensions for discovery. Some of these extensions were in the form of time extensions for specific types of discovery, some of which extended beyond the date provided. For the sake of the Court's analysis here, however, it is sufficient to note that, at the earliest, discovery ended on July 30, 2007 (Court File No. 241, p. 7).

[2] As calculated pursuant to Fed. R. Civ. P. 6(a).

P. 59(e) based on evidence Plaintiffs asserted is newly discovered (Court File Nos. 535, 536; February 28, 2008). Plaintiffs provided a declaration from Christopher Carpenter, a former hourly-paid, line worker at the Tyson plant in Corydon, Indiana (Court File No. 536, Exhibit B). Mr. Carpenter asserts a Tyson supervisor, "Miguel," was "bringing in" 100-200 Spanish-speaking, Hispanic workers every two weeks to work at Tyson (*id.*, p. 1). These workers would first be employed through Tandem Staffing (a temporary employment agency) (*id.*). Miguel would then offer the employees "fake papers," including social security numbers, for the price of $1,800 (*id.*). This cost could be paid at a rate of $100 per paycheck (*id.*, p. 2). Mr. Carpenter's knowledge is derived from having overheard Miguel discussing this information with the Hispanic employees and with Miguel's colleagues (*id.*, pp. 1-2).[3]

Fifty days after the summary judgment decision and thirty-five days after their initial motion for reconsideration, Plaintiffs filed a motion to supplement their first motion for reconsideration (Court File No. 543; April 3, 2008), submitting an affidavit from Kimorie Yates, a former hourly-paid employee at the Corydon plant (*id.*, Exhibit A).[4] Ms. Yates asserts she was present at several meetings where Tyson human resource employees would speak with illegal-alien workers in Spanish of upcoming audits by the Immigration and Naturalization Service ("INS") of Tyson's paperwork

---

[3] Plaintiffs assert this knowledge, based upon overhearing what someone else said, is not hearsay due to Federal Rules of Evidence 801(d)(2)(D) ("A statement is not hearsay if . . . [t]he statement [is] offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.") For the sake of its analysis here, the Court assumes Plaintiffs are correct and Mr. Copeland's testimony would not be inadmissible hearsay.

[4] The declaration filed by Plaintiffs with the Court appears to have been truncated at the entry numbered seven, and continues at entry eight on the next page (*see* Court File No. 543, Exhibit A). Also, entry nine is illegible. Regardless, as is evident from the analysis below, the contents of these omissions would not alter the Court's determination here.

and I-9 forms (*id.*, pp. 1-2). The human resource workers would then provide new identities and paperwork for the illegal workers (*id.*, p. 2). Ms. Yates asserts there were thirty to fifty illegal aliens present at each meeting, and these meetings were held "a couple times a year from 2000-2005" (*id.*). Ms. Yates also asserts an illegal worker named "Hector" confessed to her he was "shipped" from Mexico to work at the Corydon facility (*id.*, p. 3). Finally, Ms. Yates asserts that, at any given time, there were about 100 illegal aliens working on the floor of the Corydon facility (*id.*). Ms. Yates does not state the specific basis for this estimate (*id.*).

Sixty-five days after summary judgment, Plaintiffs filed another motion to supplement their motion for reconsideration (Court File No. 548). The motion seeks to add the declaration of Jerry Chism, a former hourly-paid employee from the Corydon plant (*id.*, Exhibit A). Mr. Chism asserts he lived in an apartment building with Hispanic Tyson workers who informed him they were not legally in the United States and that a Tyson supervisor had provided them with fake identification documents (*id.*).

## II. STANDARD OF REVIEW

### A. Reconsideration of a judgment

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 59(e) authorizes a court to alter or amend a judgment upon motion of a party no later than ten days after the judgment. The Rule does not specifically state upon what grounds such amendment is appropriate, but courts have, as follows: (1) to correct a clear error of law; (2) to account for newly-discovered evidence; (3) to accommodate an intervening change in controlling law; or, (4) to otherwise prevent manifest injustice. *CGH Transport, Inc. v. Quebecor World, Inc.*, 2008 WL 116385, *5 (6th Cir. January 8, 2008) (*citing*

*GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *accord Collison v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir. 1994); *McClendon v. B & H Freight Services, Inc.,* 910 F.Supp. 364, 365 (E.D.Tenn.,1995); *Teel v. Darnell*, 2008 WL 1751532, *1 (E.D.Tenn., April 14, 2008).

Motions for reconsideration or to alter or amend a judgment are rarely granted. "In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied." 11 Charles Alan Wright, et al., Federal Practice and Procedure Civil 2d § 2810.1; *see also Ruscavage v. Zuratt*, 831 F.Supp. 417, 418 (E.D.Pa.1993) (noting Rule 59(e) motions "should be granted sparingly because of the interests in finality and conservation of judicial resources").

To amend or alter a judgment for newly-discovered evidence, the evidence must have been previously unavailable. *GenCorp*, 178 F.3d at 834. Where such evidence existed at the time of the order or judgment being challenged, amendment is only appropriate where moving counsel made a diligent yet unsuccessful effort to discover the evidence. *Javetz v. Board of Control, Grand Valley State Univ.*, 903 F. Supp. 1181, 1191 (W.D. Mich. 1995) (*citing Buell v. Security Gen. Life Ins. Co.*, 987 F.2d 1467, 1472 (10th Cir. 1993), *cert. denied*, 510 U.S. 916 (1993)); *McClendon v. B & H Freight Services, Inc.*, 910 F. Supp. at 365. It is the burden of the moving party to demonstrate this diligent yet unsuccessful effort was made. *See CGH*, 2008 WL 116385, at *6.

As an axiomatic requirement, the newly-discovered evidence must such that an alteration or amendment of the judgment is appropriate. *See Television Reception Corp. v. Dunbar,* 426 F.2d 174, 180-81 (6th Cir. 1970). Where the newly-discovered evidence could not lead to an alteration or amendment of the challenged Court order, the previous order need not be disturbed. *See id.*

In exercising its discretion as to whether amendment is proper, a court must balance the need

to uphold the integrity of pretrial schedules and procedures, the need to uphold the finality of decisions made, and the need to render just decisions on the basis of all the pertinent facts. *Javetz*, 903 F.Supp. at 174 (*citing Lavespere v. Niagara Mach. & Tool Works., Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993)).

### B. Summary judgment

In considering (and reconsidering) a summary judgment motion, a court must view the evidence, and all reasonable inferences, in the light most favorable to non-moving parties. *See Mitsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). Essentially, a court may enter summary judgment when a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence before it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

Amendment of the Court's summary judgment decision (Court File No. 534), is not appropriate. Plaintiffs' motions fail to demonstrate the new evidence offered was diligently sought, and even if it had been, the new evidence provided does not address the causation deficiencies which also led to the grant of summary judgment.

### A. The Summary Judgment Decision and applicable law

The applicable law is more thoroughly discussed in this Court's previous decision (Court File No. 534, pp. 4-6). Briefly restated, Plaintiffs filed a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") action, predicated on two immigration offenses (*id.*). Most relevant

here, to avoid summary judgment, Plaintiffs were required to provide evidence such that a reasonable jury, based upon that evidence, could find Plaintiffs (1) established the necessary elements of the predicate offenses for their RICO claims, and (2) established the causation requirement for civil RICO claims, i.e. established a direct, proximate causal link between Defendants' alleged behavior and Plaintiffs' injury (*id.*, pp. 4-6, 24-25). Plaintiffs failed to do either (*see id.*, pp. 23-24, 29 n.17).

### B. Reconsideration of Decision not Appropriate

Plaintiffs filed a timely motion for reconsideration, based upon the declaration of Christopher Carpenter, and motions to supplement their previous motion, based upon the declarations of Kimorie Yates and Jerry Chism, long after the ten-day period provided by Fed. R. Civ. P. 59(e) expired. The Court addresses each of these filings.

#### 1. Declaration of Christopher Carpenter

This Court previously granted summary judgment, determining Plaintiffs did not provide sufficient evidence to support, within a twelve-month period, Defendants knowingly hired at least ten individuals with actual knowledge those individuals were both unauthorized to work in the United States and were brought into the country for purposes of illegal employment, as required by 8 U.S.C. § 1324(a)(3)(A) (Court File No. 534, p. 6).

Plaintiffs now present the declaration of Mr. Carpenter, who asserts a person named Miguel, an employee of Tyson, was bringing 100-200 illegal workers to work at Tyson every two weeks (*see* Court File No. 536, Exhibit B). To justify reconsideration, Plaintiffs must show (i) the new evidence was previously unavailable, and remained undiscovered despite diligent efforts to the contrary, and (ii) the new evidence, if it had been timely presented and thus considered in the

7

Court's initial ruling, would have resulted in a denial of Defendants' motion for summary judgment. *See GenCorp*, 178 F.3d at 834; *Javetz*, 903 F.Supp. at 1191 (*citing Buell*, 987 F.2d at 1472); *CGH*, 2008 WL 116385, at *6; *Dunbar*, 426 F.2d at 180-81. In considering these issues, the Court also considers the value of upholding the integrity of pretrial schedules and procedures, upholding the finality of decisions made, and rendering just decisions on the basis of all the pertinent facts. *Javetz*, 903 F.Supp. at 174 (*citing Lavespere*, 910 F.2d at 174).

a. **Not "newly discovered" evidence through "diligent effort"**

According to Plaintiffs, Mr. Carpenter contacted them on February 6, 2008, after receiving the class action notice (Court File No. 536, p. 2). Summary judgment was granted on Plaintiffs' claims on February 13, 2008 (Court File No. 534). For the sake of analysis here, the Court assumes seven days was inadequate time for Plaintiffs to fully elicit Mr. Copeland's testimony and provide the details to the Court for consideration prior to the issuance of its summary judgment order.

For the Court to reconsider its judgment, Plaintiffs must demonstrate Mr. Carpenter's declaration is newly-discovered evidence which eluded Plaintiffs' earlier, diligent, albeit unsuccessful, efforts to obtain it. *See Javetz*, 903 F.Supp. at 174. Plaintiffs have not demonstrated any effort on their part to contact Mr. Carpenter prior to Mr. Carpenter voluntarily contacting Plaintiffs on his own initiative after viewing the class notice (Court File No. 536, p. 2). There is no indication Mr. Carpenter was unable to be located prior to that time.[5]

---

[5]Plaintiffs cite *Dunbar,* 426 F.2d at 180-81, for the proposition that "it is an abuse of discretion to deny a motion for reconsideration under Fed. R. Civ. P. 59(e) based upon new evidence presented in an affidavit where the new evidence 'would probably produce a different result' and is not 'merely cumulative or impeaching'" (Court File No. 536, pp. 2, 4). The *Dunbar* court reversed the denial of a motion for reconsideration of the district court's decision at a bench trial. 426 F.2d at 180. Plaintiffs' summary of the case is misleading, and their reliance upon it is misplaced.

From the specificity of the allegations in the complaint it appeared Plaintiffs had witnesses such as Mr. Carpenter available at the time of the filing of the complaint or that such witnesses could be readily obtained. In litigating a lawsuit such as this it would be expected Plaintiffs would engage in efforts to locate and interview witnesses in Tyson facilities and the locations surrounding those facilities. With allegations of wide-spread and company wide practices of employing illegal aliens in the complaint, it would be expected that to prove the allegations resources would have to be devoted to seeking out witnesses to support those allegations at trial. It would not be unexpected to hire private detectives or advertise for terminated or disgruntled Tyson workers that could provide information.

Plaintiffs choose not to pursue that route. Plaintiffs argue whistle-blowers are difficult to find and did not emerge here until after the class notice was distributed (Court File No. 536, p. 3). Put another way, Plaintiffs argue, due to the size of the class, they were unable to contact every class member to ascertain whether that class member might have information which would permit him or her to serve as a witness at trial (*see id.*). While that may be true, that argument does not satisfy the requirement Plaintiffs demonstrate they made diligent efforts to inform class members of their need for witnesses, or to question any significant portion of those members in seeking out relevant

---

The circumstances of that case are readily distinguishable from the case here. First, the plaintiff, seeking reconsideration, provided the court with detailed evidence of its diligent efforts to secure a material witness - including inquiry at his last-known address, personal searches as to his whereabouts, and the hiring of a detective agency to locate him. *Id.* Those strategies were unsuccessful prior to trial, but the witness eventually became aware of the search and contacted plaintiff's counsel. *Id.* Here, Plaintiffs give no reason, in the over three years of discovery, why they could not have contacted Mr. Copeland (*see* Court File No. 536, p. 3).

Second, in *Dunbar*, the late information was in direct opposition to the factual findings made by the district judge in the bench trial, and would have probably altered the outcome. 426 F.2d at 180. Here, as discussed below, Plaintiffs' evidence, even if believed by a jury at trial, does not correct all the deficiencies in Plaintiffs' case, and thus summary judgment would still be appropriate.

9

testimony, during a discovery period that spanned over three years. Nor does it explain why they chose to pursue this course of action that is, as they acknowledge, risky at best instead of taking steps that were more likely to lead to this evidence.

The inadequacy of Plaintiffs' efforts to make diligent efforts to develop evidence to support their allegations is further demonstrated because, as Defendants point out, Plaintiffs did not depose any temporary agency employee or human resource employee from the Corydon, Indiana facility (Court File No. 537, pp. 4-5). This is hardly a sign of diligence in obtaining evidence, since the entire claim now asserted by Plaintiffs for reconsideration is based upon the actions of a temporary agency and human resource personnel of the Corydon facility.

Plaintiffs have failed to make any showing they diligently pursued the evidence they now present, or indeed any evidence similar to it, as required under Fed. R. Civ. P. 59(e). If they had done so, the Court would have then considered various interests weighing for and against the reconsideration of its decision, such as: upholding the integrity of pretrial schedules and procedures, upholding the finality of its decisions, and rendering just decisions on the basis of all the pertinent facts. *Javetz*, 903 F.Supp. at 174. These factors weigh against reconsideration here. Plaintiffs are not only asking for reconsideration of summary judgment, they are ultimately asking to start the entire litigation process again. Plaintiffs move the Court to redefine the class action to include only employees at the Corydon facility from 1999-2005[6] (Court File No. 536, p. 5). Because this

---

[6] The period from 1999 to 2005 also includes the time period covered by the declaration included in Plaintiffs' motion to amend their motion to reconsider based upon Ms. Yates' testimony, as addressed below (Court File No. 543).

development is based upon new evidence (*see id.*, p. 1),[7] Defendants would no doubt seek, and would be granted, an opportunity to depose Mr. Carpenter and the individual mentioned in his declaration, and to conduct further discovery as necessary to prepare their case in light of this new evidence. Plaintiffs also wish to use their expert, Dr. George Borjas, to calculate the damages of this smaller class (Court File No. 536, p. 5). The admissibility of Dr. Borjas' applied methodology for estimating determinate damages was not expressly ruled on previously because the specific damage estimate he had calculated was based upon an unreliable, and ultimately non-existent, estimate of the number of Tyson employees who were employed in violation of the predicate statutes at issue in this case (*see* Court File No. 500, p. 15). The Court could not rule now on the admissibility of this new damage calculation without providing Defendants, and Defendants' expert, an opportunity to address it at the *Daubert* stage, particularly because one significant, previously-disputed issue involved the reliability of Dr. Borjas' damage estimate in state and regional data sets, as opposed to the nationwide data sets normally utilized in this sub-branch of economics (*see* Court File No. 412, Exhibit E, pp. 3, 6-7).

Reconsideration of the summary judgment decision would cause a resetting of the litigation to the beginning. It is difficult to imagine a case where the value of upholding the finality of decisions and upholding the integrity of pretrial schedules and procedures would weigh more heavily against reconsideration. *See Javetz*, 903 F.Supp. at 174. Plaintiffs were given extensive amounts of discovery and very generous leeway in conducting that discovery. Plaintiffs' lack of diligence in pursuing the evidence they now (mistakenly) assert would adequately support their allegations

---

[7]Plaintiffs' characterization of this evidence as "new" is questionable. Defendants assert Mr. Carpenter is not a newly-discovered witness (Court File No. 537, p.4). The Court assumes Mr. Copeland's testimony is new for the purposes of the analysis here.

forecloses any possibility of granting them the relief they seek.

One final point regarding Plaintiffs diligence bears mention. Plaintiffs state they did not distribute the class notice until January 3, 2008, one month after the Court approved the class notice (Court File No. 540, pp. 3-5). They suggest they were delayed because the Court was dilatory in approving the notice. However, at no time prior to this point did Plaintiffs inform the Court that they were relying upon class notice to passively obtain witnesses upon which their entire case would hinge.[8] The Court was under the impression Plaintiffs would utilize discovery - the traditional method used to obtain evidence to substantiate one's claim. That impression seemed particularly warranted here, where Plaintiffs were privy to extremely prolonged, and very generous, discovery.

As previously stated, Plaintiffs have failed to demonstrate any diligent effort in obtaining Mr. Copeland's testimony, the newly-discovered evidence in question. Accordingly, the Court will **DENY** Plaintiffs' motion for reconsideration (Court File No. 535).

### b. No change in the judgment

---

[8]Plaintiffs only communication to this Court objecting to the timeliness of the approval of the class notice language was, as Plaintiffs point out (Court File No. 540, p. 2), on October 25, 2007, in their motion to continue the *Daubert* hearing and trial dates. Plaintiffs invested three sentences to what now appears to be a cornerstone of their current motion for reconsideration, as follows:

> Moreover, the trial date of March 3, 2008 should be continued because the Court has not yet approved the Plaintiffs' proposed notice to the class. The notice and opt-out procedure cannot be completed in time for trial on March 3, 2008. (Plaintiffs suggest the trial date be coordinated with approval of the proposed class notice.)

(Court File No. 421, p. 2).

The Court sees no mention of a need for passive discovery through the issuance of the class notice. Furthermore, the notice procedure was completed prior to the scheduled trial and the summary judgment order. Based upon Plaintiffs' distribution of the class notice on January 3, 2008, one month after the Court approved the notice language, class members had forty-one days to opt-out of the class prior to the Court issuing its order dismissing the case.

As previously stated, Plaintiffs' motion for reconsideration fails to satisfy the diligence requirement pursuant to Fed. R. Civ. P. 59(e) and its accompanying case law. Plaintiffs also fail to satisfy the second requirement of Fed. R. Civ. P. 59(e), i.e. the newly-discovered evidence would have altered the judgment. *See Dunbar*, 426 F.2d at 180-81.[9] Even if the Court had been provided Mr. Copeland's testimony to consider when reviewing Defendants' summary judgment motion, the Court would still have granted summary judgment. Plaintiffs assert Mr. Copeland's testimony sufficiently satisfies the summary judgment standard for its predicate offense pursuant to 18 U.S.C. § 1964. However, whether it does is immaterial, because Mr. Copeland's testimony does nothing to address Plaintiffs' fundamental failure in establishing the causation requirement in its civil RICO action. *See* 18 U.S.C. § 1964; *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000). This Court addressed these causation deficiencies in its summary judgment memorandum (Court File No. 533, pp. 24-29),[10] and these deficiencies still remain.

### 2. Declaration of Kimorie Yates

Plaintiffs provide the declaration of Ms. Yates in a motion to amend their motion for reconsideration (Court File No. 543). Ms. Yates asserts she was present for several meetings where Tyson human resource employees at the Corydon, Indiana facility supplied illegal aliens with false

---

[9] The United States Court of Appeals for the Sixth Circuit in *Dunbar* determined the newly-discovered evidence in its case "would *probably* produce a different result." 426 F.2d at 180 (emphasis added). The Court here states a stronger proposition - i.e. the evidence *would have* produced a different result - because unlike the Court of Appeals in *Dunbar*, which had to remand the district court's decision so the newly-discovered evidence could be considered, this Court can review its previous order granting summary judgment and determine Plaintiffs' newly-discovered evidence would not have affected its decision.

[10] Although the Court had already dismissed Plaintiffs' RICO claim predicated on 8 U.S.C. § 1324(a)(3)(A) prior to the causation analysis, the Court acknowledged that dismissal of that claim would have also been proper based upon causation deficiencies (Court File No. 533, p. 29 n. 17).

13

identities (Court File No. 543, Exhibit A).

Although Plaintiffs label the motion as one to amend or revise their previous memorandum in support of reconsideration (Court File No. 543), the motion puts forth new and independent evidence, i.e. new evidence in the form of a declaration by Ms. Yates, to argue for reconsideration. Therefore, this Court views Plaintiffs' motion to amend for what it is - a second motion for reconsideration.

Fed. R. Civ. P. 59(e) permits a party to move a court to alter or amend its judgment "no later than 10 days after the entry of the judgment." Plaintiffs filed their second motion fifty days after the Court's decision. Therefore, the Court will **DENY** Plaintiffs' second motion for reconsideration because it was not filed within the ten days required by Fed. R. Civ. P. 59(e) (Court File No. 543).

Even if Plaintiffs had filed this motion within ten days of summary judgment, the Court would have denied the motion on the same grounds as it denies Plaintiffs' first motion for reconsideration, as above. Plaintiffs have failed to demonstrate diligence in pursuing Ms. Yates as a witness, and have failed to overcome the causation deficiencies still present in their claim.

### 3. Declaration of Jerry Chism

Mr. Chism asserts several illegal aliens informed him a Tyson supervisor provided them with false identities (Court File No. 548, Exhibit A). Like the motion containing Ms. Yates' declaration, this motion to amend puts forth new and independent evidence to argue for reconsideration; it is a separate motion to reconsider. The Court received this motion sixty-five days after summary judgment - well beyond the ten days afforded to Plaintiffs to file such a motion. Thus, the Court will **DENY** Plaintiffs' third motion for reconsideration because it was not filed within the ten days required by Fed. R. Civ. P. 59(e) (Court File No. 543).

Furthermore, as with the motions supported by the declarations of Mr. Carpenter and Ms. Yates, Plaintiffs have failed to demonstrate diligence in pursuing Mr. Chism as a witness, and have failed to overcome the causation deficiencies still present in their claim. Even if Plaintiffs had timely filed this motion, it would be denied on those grounds.

## VI. CONCLUSION

For the foregoing reasons, this Court will **DENY** Plaintiffs' motions for reconsideration (Court File Nos. 535, 543, 548).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**